MILES GIBBONS, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

### ERROR TO MORGAN.

Where it appeared on a conviction for manslaughter, that the two principal witnesses had sworn differently upon the coroner's inquest, from what they did on the trial, which was for murder; and that the latest testimony of these witnesses was not corroborated, but was clouded with suspicion; a new trial will be granted.

In criminal cases, the jury should, when out of the presence of the court, be placed in charge of an officer, specially sworn.

IN this case an indictment was found for murder in the Green county Circuit Court, and removed to the Circuit Court of Morgan county by change of venue.

The questions raised in the case arise upon the facts which are sufficiently stated in the opinion of the court.

The case was tried, and a verdict of manslaughter was returned, and the prisoner sentenced to the penitentiary for five years.

During the trial, the jury was permitted to leave the court under the charge of a constable in attendance upon the court, who was not a sworn officer as required by law.

The jury found no verdict that the defendant was not guilty of murder as charged in the indictment.

Motion for a new trial was made, for reason that the only witnesses who proved anything against the defendant, were sworn before the coroner's jury, and there testified that they knew nothing of the charge that the defendant committed the crime, and they swore upon this trial that they saw defendant strike deceased with a stick of wood and kill him, therefore the testimony of said witnesses was entirely incredible.

Also, because said jury was permitted to disperse as stated above, not being under the charge of a sworn officer; and for the reason that the verdict was not responsive to the indictment in not disposing of the charge of murder ; and also, for newly discovered testimony.

The court overruled the motion for a new trial, and rendered judgment upon the said verdict.

M. McConnel, for Plaintiff in Error.

J. B. White, State's Attorney, for The People.

Walker, J. It is urged that the evidence upon which this conviction was procured, was insufficient to sustain the finding of the jury. It appears 'from the admissions of the two witnesses by whom the prosecution seek to establish the guilt of the prisoner, as well as by the testimony of others, that they, before the coroner's inquest, denied all knowledge of the manner in which the deceased received the injury which resulted in his death. And yet they testify, on the trial below, that they saw accused beat Swift to death with a club. And for this extraordinary and almost unprecedented conduct, they give no other explanation than that they were afraid they would receive some injury from accused. This explanation is unsupported by anything in the evidence. They also admit that they had previously had difficulty with the accused, because they had sold liquor to his railroad hands. These circumstances are certainly highly calculated to greatly impair, if they do not wholly destroy the credit of the testimony of these witnesses. And it standing as it does, unsupported by any other evidence in the case, is certainly very slight, if it can be sufficient to support a

conviction, even if it were not otherwise impeached. But this evidence is positively contradicted by the man who accompanied accused at the time of the occurrence. He testifies (and they admit that he was present) that no such fight as they describe, occurred, nor did the accused attack the deceased as they state. He was present during the time, had every opportunity of knowing the circumstances, which they possessed, and he stands wholly unimpeached, so far as this record discloses. Again, he is corroborated by the testimony of other witnesses, in his version of the matter. This witness testifies that accused and himself were at Cunningham's shanty, when they discovered a horse and a mule coming from the direction of the railroad, with the bridle over their necks, and saddle under the mule's belly, and without a rider. That accused started at once in the direction, and told witness to secure his horse and follow. That after he had fastened the horse, he hastened to the railroad, where he found accused holding deceased in a sitting posture, who appeared to be greatly injured by a cut on the head, and was insensible. That they immediately removed deceased to Cunningham's shanty, where they dressed his wounds and administered all the relief they could furnish. That deceased then sent the witness after a physician, and on his return he found that Swift had died in his absence. The Cunninghams, when before the coroner's inquest, gave substantially the same version. Another witness testified, that he saw deceased, at the time, riding the mule and leading the horse, in the direction of Cunningham's; that he was apparently drunk, and sat upon his animal with difficulty, and when he approached the railroad, he seemed to have some difficulty with his animals, and when they rose the bank on the opposite side of the railroad, deceased was not on either animal, and he could not see him, and that he appeared to fall as he approached the road.

The only evidence that was relied upon to impeach these witnesses and to support the Cunninghams, was that of a witness who testified to having examined the ground where the accident was said to have occurred, on the succeeding day, and that he could not then discover the appearance of any blood. He also testified, that he again returned on the next day, and then saw the appearance of blood on a small stump at the place, and that he, at the same time, saw a portion of a beef recently killed near Cunningham's. The witnesses say the ground was wet and muddy at that place, and to our minds there is nothing extraordinary that blood should not be discovered on the wet ground twenty-four hours after it was spilt, nor that it might be detected on a stump forty-eight hours afterwards. That circumstance, when it has given to it all the weight to which it can be entitled,

is certainly very slight to impeach the evidence of two witnesses, if they were honest and fair.    But even if it was sufficient, the People's witnesses had sworn falsely, either on the trial, or before the coroner's inquest, and by creating a doubt of the veracity of the witnesses on the part of accused, would only leave it doubtful which should be credited.    Still, the evidence of the guilt of accused was not clear, and free from all reasonable doubt. If the evidence on the part of accused had been excluded, the People's evidence at most could only be considered as preponderating in favor of his guilt.

But in the absence of the appearance, manner, and intelligence of the witnesses on the stand, which we have no means of knowing, the preponderance of the whole of the evidence in the case, would seem to be in favor of the innocence of the accused.    And we think it should be again submitted, to be passed upon by another jury.

The court also erred in permitting the jury, after they were impannelled in the case, and before they retired to consider of their verdict, to be in the charge of an unsworn officer.    Chit. Crim. Law, vol. 1, p. 628 ; *Jumpertz* v. *The People*, 21 Ill. R. 375 ; *Kinney* v. *The People*, 2 Gilm. 553.    While we might not be inclined to reverse a conviction for manslaughter, in a trial for murder, or a conviction for ordinary felonies, we think by far the best practice is, never to omit the precaution of having the officer, in charge of the jury, sworn, at all times after they are impannelled, and when they are not in the presence of the court.    Such a practice certainly inspires confidence in the community, that when convictions are had, that they are free from improper influences upon the jury, and tends more strongly to protect the rights of the citizen, and prevent the conviction of the innocent.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*