## THE STATE v. CADWELL.

79  473
89  113
79  473
98  323

1. **False Pretenses:** DRAFT DRAWN AGAINST NO FUNDS: INDICTMENT: SUFFICIENCY. The indictment in this case charges the defendant with obtaining money and property upon the false pretense that he had money in a certain bank, upon which he drew a draft which he gave in exchange for the money and property. Upon examination of the indictment (see opinion), *held* that it was not vulnerable to the objection that the facts constituting the offense were not set out with sufficient fulness,—the averments being sufficient to inform defendant of the charge against him, and of the facts which could properly be shown to prove it; nor to the objection that it did not show when the draft was payable,—it sufficiently appearing from the language used that it was payable at sight.

2. **Criminal Law:** CHANGE OF VENUE: DISCRETION OF COURT. An application for a change of venue in a criminal case, based upon the alleged prejudice of the people of the county, and supported by affidavits and resisted by counter-affidavits, is addressed to the sound discretion of the trial court, which this court will not interfere with in the absence of a showing of abuse.

3. **False Pretenses:** DRAFT DRAWN AGAINST NO FUNDS: INDICTMENT AND PROOF. The indictment charged defendant with drawing a draft upon a bank in which he had no funds, and delivering it in exchange for money and property. Defendant and another were partners in the banking business, and the draft in question was drawn in the name of the bank owned by them, by himself as cashier. *Held* that it was not admissible in evidence to sustain the indictment, because it was not his draft, and was not payable out of his funds, if he had any, in the bank upon which it was drawn.

*Appeal from Harrison District Court.*—HON. SCOTT M.
LADD, Judge.

FILED, FEBRUARY 8, 1890.

DEFENDANT was convicted of the crime of obtain-
ing money by false pretenses. He was adjudged to be
imprisoned in the penitentiary at Fort Madison for the
period of twenty-one months, and from that judgment
he appeals.

*L. R. Bolter & Sons* and *J. W. Barnhart,* for
appellant.

*John Y. Stone,* Attorney General, for the State.

ROBINSON, J.—The indictment charges that the
alleged offense was committed as follows : "That W.C.
Cadwell, on or about the eighth day of October, 1888,
in the county aforesaid, with intent to defraud one
H. W. Bostwick of his money and property, did design-
edly, falsely and fraudulently represent to him, said·
Bostwick, that he, said defendant, had on deposit in
the Citizens' Bank of Council Bluffs, Iowa, money sub-
ject to draft, which representations were false, and were
known to defendant to be false, and were made by
defendant with intent to defraud, and obtain from said
Bostwick money and property of the value of $1,148.75
in currency, checks, drafts and bills of exchange, a
more particular description of which is to the grand
jurors unknown, in exchange for a draft given by said
defendant to said Bostwick, and drawn upon said Cit-
izens' Bank of Council Bluffs, for the sum of $1,148.75,
which draft defendant well knew to be of no value.
And said Bostwick, believing said representations made
by defendant to be true, and, being deceived thereby,
was induced by reason of said false representations and
false pretenses to part with his said money and prop-
erty, and accept said draft of defendant therefor,
believing said draft would be paid on presentation

thereof for payment at said Citizens' Bank, and which said draft, or the payment thereof, was refused by said bank when presented, whereas, in truth and in fact, said defendant had no money on deposit to meet said draft in said Citizens' Bank on said day, or at any time since; all of which was well known to defendant, and defendant knew at the time of making the alleged representations to said Bostwick that such representations, regarding the money on deposit in said Citizens' Bank, to meet the payment of said draft, were false, and were made designedly, and by false pretense, and with intent to deceive and obtain from said Bostwick money, goods and property." A demurrer to the indictment was overruled. To that ruling the defendant excepted.

I. The first objection to the indictment raised by the demurrer is that the facts constituting the offense

1. FALSE pretenses: draft drawn against no funds: indictment: sufficiency. charged are not set out with sufficient fulness. The *gravamen* of the charge is that defendant, by means of false pretenses, obtained of Bostwick, on the date named, money and other property of the value of $1,148.75 in currency, checks, drafts and bills of exchange, a particular description of which the grand jurors could not give; that the false pretenses consisted of representations; that the draft given by defendant for said property was drawn against funds with which it would be paid on presentation; and that Bostwick believed and relied upon such representations, and was deceived by them. The date of drawing the draft, its amount, and the name of the bank on which it was drawn, were specified. Those statements were certainly sufficient to inform defendant of the charge against him, and of the facts which could properly be shown to prove it. It, therefore, met the requirements of the statute. See Code, sec. 4296.

II. The next objection urged to the indictment is that it does not show whether the draft given to Bostwick was payable on presentation, or at some later

date; that it is silent as to what representations, if any, defendant made as to time of payment; and that the draft may not have been due when the indictment was found. The indictment charges that defendant falsely, and with fraudulent intent, represented that he had money on deposit with the Citizens' Bank, subject to draft; that said draft was presented for payment, and payment refused by the bank on which it was drawn. The averment is positive, in substance, that defendant represented that he had money on deposit subject to draft, and that such representation was false, and known to defendant to be so, when made, and that he had not had money on deposit subject to draft since that time. The language of the indictment could have been much improved, but, we think, taken as a whole, it shows with reasonable certainty that defendant drew the draft he gave to Bostwick; that it was due when presented, and when payment was refused; that defendant represented that it was drawn against funds; and that the statement was false, and was known to him when made to be false, and was relied upon by Bostwick, who believed it to be true. It was not necessary to set the draft out in the indictment, nor to allege that it was of no value. We conclude that the action of the court in overruling the demurrer was correct.

III. Before the trial to the jury was commenced defendant applied for a change of venue, on the ground of excitement and prejudice against him in the county where the cause was pending. His petition was supported by his own affidavit, and the affidavits of about fifty residents of the county. In opposition to the petition, the state filed the affidavits of seventy-seven such residents. The petition was denied, and defendant complains of that ruling. The application should have been decided by the court in the exercise of a sound discretion. Code, sec. 4374, as amended. We discover no evidence that the discretion given by the statute was abused.

2. CRIMINAL law: change of venue: discretion of court.

IV. It is shown by the evidence that, when the draft in question was given, the defendant and his father,

The State v. Cadwell.

3. FALSE pretenses: draft drawn against no funds: indictment and proof. Phineas Cadwell, were engaged as copartners in doing a banking business at Woodbine and Logan. The business of the firm was carried on at Woodbine under the name of the "Boyer Valley Bank," and at Logan under the name of "Cadwell's Bank." Defendant acted as the cashier of the Boyer Valley Bank. H. M. Bostwick was cashier of the Commercial Banking Company of Woodbine. On the eighth day of October, 1888, near the close of banking hours, Bostwick, in his official capacity as cashier, went to the Boyer Valley Bank to collect of it a draft on it for one thousand dollars, drawn by Cadwell's Bank, at Logan, payable to Officer & Pusey, and indorsed and forwarded by them for collection and credit. Bostwick also presented at the same time, for payment, four checks on the Boyer Valley Bank, two of which amounted to two hundred and sixteen dollars. At that time the Boyer Valley Bank held checks drawn on the Commercial Banking Company. In exchange for the draft and checks presented by Bostwick,—checks his bank held on the banking company,—defendant, as cashier, delivered to him the draft in controversy. It was for $1,148.75, and was drawn by defendant as cashier, in the name of the Boyer Valley Bank. When the state offered it in evidence, it was objected to as immaterial, incompetent and irrelevant, not purporting to be a draft drawn by defendant, as stated in the indictment. The objection was overruled, and the draft was introduced in evidence. It is insisted on behalf of the state that the draft was properly admitted in evidence, for the reason that defendant, as a partner, had an interest in the Boyer Valley Bank, and in any deposit which may have been to its credit in the Citizens' Bank of Council Bluffs. That will be presumed to be true; but he was neither the owner of the Boyer Valley Bank, nor of deposits to its credit. The indictment charges that he represented he had in the Citizens' Bank a deposit subject to draft, and that the draft he delivered to Bostwick was drawn against it. The one introduced in evidence

was not his individual draft, nor did it purport to be drawn on his account. The Citizens' Bank would not have been authorized to pay it from funds of defendant, had they been on deposit, for it did not so direct. The indictment does not describe the draft introduced in evidence. It does not seek to charge defendant for false pretenses made on behalf of another. It does not inform him that the alleged false pretenses were made in regard to partnership matters. The fact that he may be liable on the draft as a partner of the firm which drew it does not make it his draft, within the meaning of the indictment. It is proper to state, in this connection, that the only representation in fact made by defendant when the draft was delivered was that included in the draft itself, and the act of drawing and delivering it. Bostwick states that defendant said nothing to him at that time with reference to having money on deposit on which the draft was drawn, and that the draft would be paid when presented, other than the fact that it was given to him. We are of the opinion that the draft should not have been admitted in evidence.

V. The admissibility of the draft involved a controlling question in the case, which was raised in different forms during the trial in the court below. What we have said disposes of all questions which it is necessary to determine on this appeal. The judgment of the district court is                    REVERSED.