THE STATE OF IOWA, Appellee, v. CHARLES K. SHREVES, Appellant.

1.  **Manslaughter:** SELF-DEFENSE: EVIDENCE. The defendant was indicted for the crime of murder in the second degree. He admitted having inflicted the wounds resulting in the death of the deceased, but insisted that he acted in self-defense. The evidence showed that, on the evening when the act was committed, the deceased was under the influence of liquor, and unable to walk steadily, and that when in such condition he was quarrelsome, garrulous and insulting ; that he had previously taken offense at defendant because of a report that he had insulted his sister, and had stated to others that he intended to whip him the first time he saw him ; that, meeting defendant on the street, he told him he wanted to speak to him, and the two walked off together ; that so far as their conversation was overheard by others it indicated that the deceased was charging defendant with some reprehensible conduct, and that defendant was denying it ; that finally the deceased addressed defendant, saying, " I will whip you," and

"you have got to fight ; " that soon afterwards the deceased was seen on the ground, with defendant leaning over him ; that when the deceased was found just after the encounter he was unable to speak and was in a dying condition, and had six wounds upon his person, one in the back, another on the shoulder blade, another on the right arm, another just above the left eye-brow, another on the nose, and another on the left of the breast-bone, all of which, except those on the nose and eye-brow, were severe cuts, and were made by defendant with his knife ; that before the fight deceased had removed his coat and vest, but when found he had no weapon on his person, and none was found at the place of conflict ; that defendant's clothing after the encounter was neither soiled, torn nor disarranged, and there was no evidence that he received any injury. *Held*, that the evidence warranted the jury in finding the defendant guilty of manslaughter.

2. **Acts of General Assembly :** TITLE : VALIDITY. The omission from an act of the general assembly of any reference to the number and name of a chapter of the Code amended thereby, as provided by Code, section 38, will not invalidate such act, even though the secretary of state fail to supply such omission as required by the same section.

3. **Peremptory Challenges :** EX POST FACTO LAWS : ACTS PERTAIN- ING TO REMEDY : VALIDITY. At the time defendant's crime was committed the law in force entitled defendants in such cases to twenty peremptory challenges to the jury, and the state to but ten. Subsequently, the law was amended by the legislature so as to give the defendant but ten such challenges, the same as given to the state ; which law did not go into effect until after the com- mencement of the prosecution herein. *Held*, that the amendment affected no vested right of the defendant, but pertained merely to the remedy, and was valid.

4. **Criminal Prosecutions :** COUNTY ATTORNEY: ASSISTANT COUNSEL. The employment of counsel by a prosecuting witness or party complaining, with the approval of the court and county attorney, to assist in the prosecution of a criminal case, is not prohibited by Acts of the Twenty-first General Assembly, chapter 73, section 4.

5. ——— : ARGUMENT TO JURY : IMPPOPER REMARKS BY COUNSEL FOR STATE. A judgment in such a proceeding will not be reversed on account of improper remarks alleged to have been made by counsel for the state in the closing argument to the jury, when there is a marked conflict in the record upon the question whether such remarks were made, and it does not appear that any objection was made thereto until after the verdict was rendered.

6. **Murder :** SELF-DEFENSE : INSTRUCTIONS : USE OF WORD COURA- GEOUS. An instruction to a jury upon the issue of self-defense in a prosecution for murder, that in determining whether the defend- ant was justified in using a dangerous weapon in self-defense, the

inquiry is "whether, from all the attendant and surrounding circumstances at the time of the conflict, it reasonably appeared to defendant, as a reasonable, prudent, courageous and cautious man, that he was about to suffer death or great bodily harm" at the hands of the deceased, while not accurate according to a strict construction of the language used, yet it will not be deemed a reversible error when the rule applicable to self-defense is correctly stated in several other paragraphs of the court's charge, and it is apparent that the court intended to qualify the word "courageous" by the word "reasonably."

*Appeal from Adair District Court.*—HON. A. W. WILKINSON, Judge.

### THURSDAY, JANUARY 22, 1891.

THE defendant was indicted for the crime of murder in the second degree. He was tried and convicted of manslaughter, and sentenced to imprisonment in the penitentiary for the term of three years, and he appeals.

*Grass & Storey* and *Gow & Hager*, for appellant.

*John Y. Stone*, Attorney General, *C. W. Neal*, County Attorney, and *Chas. S. Fogg*, for the State.

ROTHROCK, J.—The indictment charges that the defendant killed one Louis Miars, and that the act was done under such circumstances as to constitute the crime of murder in the second degree. The defendant pleaded not guilty. The evidence shows without dispute that Miars came to his death by reason of wounds inflicted upon his person by the defendant, with a knife. The defendant was a witness in his own behalf, and he testified that he inflicted the wounds which caused the death of Miars. But it was strenuously contended all through the trial, and counsel for defendant earnestly contend in their argument in this court, that the killing was excusable on the ground of self-defense. And it is insisted that, under all the evidence in the case, the jury should have found the defendant not guilty. In other words, it is claimed that the verdict is not supported by

the evidence. When the state had completed the introduction of the evidence in behalf of the prosecution, a motion was made to dismiss the case, on the ground that there was no evidence authorizing a conviction. The same ground was embodied in the motion for a new trial.

I. We are required, first, to determine whether the court erred in overruling these motions on the grounds

1. MANSLAUGH- stated, and, as they present in effect the
ter: self-
defense: evi- same questions, we will consider them
dence. together. It appears from the record that the tragedy occurred 'at the village of Orient, in Adair county, at about eight o'clock P. M. on the second day of June, 1888. Orient is a place of about one hundred and fifty or two hundred inhabitants. Miars was a married man, and resided about a mile and a half from the village. But he had been for some time in business in the village. At one time he kept a meat market, and at the time of the homicide he was engaged in selling fresh fish. Shreves had been engaged in assisting his brother in a hardware store in the village. He quit his employment some time before the year 1888, and went elsewhere. He returned to the village but a few hours before he killed Miars. He arrived there on a train on his way to the home of his father, who resides at Greenfield, and was induced by his brother to stop off and remain until the next day. It appears that both Miars and Shreves were well known to the people of the village and the surrounding neighborhood. A large number of witnesses testified to the character and reputation of Miars. He was addicted to the excessive use of intoxicating liquor, and was frequently very much intoxicated. When sober, he was of a peaceable and orderly disposition; when drunk, he was quarrelsome, garrulous and insulting. This trait of his character seems to have been confined to mere quarreling. It does not appear that he had the reputation of being a dangerous man. No witness testified that he was a dangerous character. It is true that it was shown in evidence that at times he carried a revolver and a knife,

and that he frequently carried in his pockets metallic knuckles. He had a young, unmarried sister, who resided with her father in or near the village, and it appears that he had taken offense at Shreves, because of some report that came to him that Shreves had insulted his sister. He stated to others that he intended to whip Shreves the first time he met him, because Shreves wanted his sister to meet him at a hotel in St. Louis or Kansas City, and register as Mrs. Shreves. Shortly after Shreves arrived in Orient, he called on the young woman and remained a short time, and then went to his brother's store with a brother of Miars. Louis Miars was very much intoxicated on that day and evening; so much so that it was plainly noticeable. All the witnesses concur in this. He was able to walk, but it was in a staggering way. He was in this condition when he approached Shreves on the street, and said he wanted to speak to him. Shreves answered, "Very well," or words to that effect, and stepped aside to hear what he had to say. The two men walked off together. Only part of their conversation was heard by others. The import of it was that Miars was charging Shreves with having been guilty of some reprehensible conduct, and Shreves was denying it. They continued their walk in the direction of the home of Miars' father, and some of their conversation appeared to convey the idea that they were going there to settle the matter of which Miars was complaining. Miars was insisting on a fight, and Shreves was refusing to fight. After going some distance, they could not be seen distinctly, and only occasional expressions could be heard from them. As one witness expressed it: "Miars seemed to be charging him with something, and he was denying it." The same witness heard Miars say: "I will whip you [with an oath], or, God damn you, you have got to fight." The next that was heard Miars said: "I will take it back, I will take it back." Miars was then on the ground, and Shreves was leaning over him. Shreves said to Miars: "What can I do for you? I will do anything in the world for you. I will go up town and

see and get some one to help you." He started for
town and met Dr. Monette, who had heard the conver-
sation above set out, who asked him: "What are you
doing down there?" Shreves replied: "That man
jumped onto me, and I am afraid I have hurt him. I
wish you would go down and see him. I will go up
town and get some one, too, or send some one back."
Dr. Monette went down to where Miars was lying, and
found him unable to speak, and in a dying condition.
He was carried to his father's home, and expired in a
very short time. When Miars was found, he had no
weapon on his person, and none was found at the place
of conflict. He had removed his coat and vest before
the fight. These garments and a pint bottle of whiskey,
nearly full, were found on the ground near where the
fight took place. There is no evidence that the defend-
ant received any injury whatever in the fight. His
clothing was neither soiled, torn nor disarranged. Six
wounds were found upon the person of Miars. The
evidence shows that they were made by the defendant
with his knife. One wound was in the back, another
on the shoulder-blade, another on the right arm, another
just above the left eyebrow, another on the nose, and
another on the left side of the breast-bone. All of these
wounds, except those on the nose and eyebrow, were
severe cuts. That on the back was five inches long, and
from one to one and one-half inches deep. The one on
the shoulder-blade was two inches deep, and two inches
long. The wound on the arm was a stab not over three-
quarters of an inch wide, and something less than an
inch deep. The wound near the breast-bone was about
two inches deep, and was necessarily fatal. It is
impracticable to set out in detail all of the minute facts
in a case like this in an opinion. The jury were fully
warranted in finding the leading facts to be as we have
stated them above. In view of the drunken, staggering
condition of the deceased, the removal of his coat and
vest for a fist-fight, and the six gaping wounds inflicted
upon him by the defendant, and taking into account
the further fact that the clothing of the defendant was

not disarranged, and that he received no injury in the conflict, it would be an amazing departure from all judicial precedent for this court to determine that the jury were not warranted in finding the defendant guilty of manslaughter. The rulings of the court in this respect were correct.

II.   Upon the impaneling of the jury to try the case, the defendant demanded the right to twenty peremptory challenges. The claim was denied, to which ruling the defendant excepted, and it is urged that this ruling was erroneous. Sections 4413 and 4414 of the Code provide that, if the offense charged in the indictment is or may be punished by imprisonment in the penitentiary for life, the state is entitled to ten peremptory challenges, and the defendant twenty, and that the state shall be entitled to the first challenge, and shall challenge one juror, and the defendant shall be entitled to the second challenge, and shall challenge two jurors, and so on alternately until all the challenges are exhausted. These sections of the law were amended by chapter thirty-nine of the Acts of the Twenty-second General Assembly, which took effect on the fourth day of July, 1888. The amendatory act, with its title, is as follows: "*Peremptory Challenges of Jurors.* An act to amend sections 4413 and 4414 of the Code of Iowa, relating to peremptory challenges of jurors in criminal cases. Be it enacted by the general assembly of the state of Iowa: · Section 1. That sections 4413 and 4414, of the Code of Iowa, be, and the same are hereby, amended to read as follows: 'Sec. 4413. If the offense charged in the indictment is or may be punishable with death or imprisonment for life, the state and defendant are each entitled to ten peremptory challenges; if any other felony, to six each, and, if a misdemeanor, to three each. Sec. 4414. The state shall be entitled to the first challenge, and shall challenge one juror; the defendant shall be entitled to the second challenge, and shall challenge one juror; the state shall

2. ACTS of general assembly: title: validity.

be entitled to the third challenge, and shall challenge
one juror; the defendant shall be entitled to the fourth
challenge, and shall challenge one juror; and so on
alternately until all the challenges are exhausted.'
Approved April 12, 1888.'' It is claimed that this
amendatory act is unconstitutional, because it is defect-
ive in its title, in not stating the subject of the legisla-
tion as required by section 29, article 3, of the
constitution. The argument of counsel is not really a
contention that the subject is not expressed in the title,
but that it fails to comply with another section of the
Code, which is as follows: ''Sec. 38. Every act
passed in amendment of, or in addition to, any chapter
or section of this Code, or in addition to any previous
act of the same kind, shall contain in the title thereof a
reference to the number and name of the chapter so
amended or added to, and, if such reference be omitted,
the secretary of state shall, in preparing such act for
publication, supply the omission.'' It is claimed that
the amendatory act was not legally enacted, because
there is no reference in the title to the number and
name of the chapter of the Code which was amended.
The answer to this claim is plain. By the very terms
of the section requiring the number and name of the
chapter to be referred to, it is provided that, if such ref-
erence be omitted, the secretary of state shall supply the
omission. But it is claimed that the omission was not
supplied. This may be true, and yet the act is not for
that reason to be held invalid. It is a provision merely
in aid of ready reference, and the validity of the law
cannot be affected by the omission of the secretary of
state to perform a mere clerical act. The title of the
amendatory act fills all of the requirements of the con-
stitution.

III. It is further claimed that the defendant had
the right to twenty peremptory challenges, because the
alleged crime was committed and the
prosecution commenced before the amenda-
tory act took effect. It is insisted that the
repeal of the former statute could not

3. PEREMPTORY
challenges:
ex-post-facto
laws: acts per-
taining to rem-
edy validity.

affect the defendant's right to twenty peremptory challenges. The statute upon which the claim is made is section 45 of the Code, which provides, among other things, that " the repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the statute repealed." The amendment of the original section of the Code was not a repeal. It affected no vested right (it pertained merely to the remedy); no right such as trial by jury, the statute of limitations, or appraisement or exemption laws. It is a mere amendment as to the manner of making up a jury for the trial of a cause, and is applicable to the organization of all juries after it took effect, no matter when the proceeding was commenced. *Eikenburg v. Edwards*, 71 Iowa, 82.

IV. It is claimed that the county attorney in making his opening statement to the jury was guilty of

4. CRIMINAL prosecutions: county attorney: assistant counsel.

such misconduct as to require a reversal of the judgment. It is not necessary to set out all of the opening statement. It is claimed that it contained assertions as to what evidence would be introduced by the state, which were untrue; that no such evidence was offered; and that the unwarranted statements were very prejudicial to the defendant. An examination of the full address made on that occasion, in connection with the evidence in the case, satisfies us that there was no such a departure from proper methods as required the court below to set aside the verdict and grant a new trial.

V. It is further claimed that the court erred in permitting counsel other than the county attorney to

THE SAME.

appear and take part in the prosecution. It is not denied that, prior to 1886, it was within the discretion of the court and the district attorney to allow assistant counsel in the trial of a criminal cause. See *State v. Fitzgerald*, 49 Iowa, 261; *State v. Montgomery*, 65 Iowa, 483; *State v. Ormiston*, 66 Iowa,

143.   But it is claimed that by section 4 of chapter 73 of the Acts of the Twenty-first General Assembly no attorney is authorized to appear and assist in the trial of a cause at the instance of a private prosecutor.    That section is as follows:   "The county attorney may appoint deputies, who shall act without any compensation from the county, to assist him in the discharge of his duties.   With the approval of the district court, he may procure such assistance in the trial of a person charged with the crime of felony as he shall deem necessary, and such assistant, upon presenting to the board of supervisors a certificate of the district judge before whom said cause was tried certifying to the service rendered, shall be allowed a reasonable compensation therefor, to be fixed by the board of supervisors.   But nothing in this section shall be construed to prevent the board of supervisors from employing an attorney to assist the county attorney in any cause or proceeding in which the state or county is interested."   This section contains no language prohibiting a prosecuting witness or party complaining from employing counsel, with the approval of the court and county attorney, to assist in the trial of a criminal case. In the absence of such a prohibition, the rule is not changed from that announced in the cases above cited.

VI.   Complaint is made of certain language used by counsel representing the state in the closing argument to the jury.   We must be allowed to dispose of this very briefly.   It is not necessary to set out the alleged improper language. It is enough to say that there is a marked conflict in the record as to whether the alleged improper remarks were made.   Moreover, no objection was made thereto until after verdict.   Under such circumstances it is unnecessary that we should repeat the language, much less reverse the judgment on the determination of this issue, which appears to have been tried with about as much particularity as the trial of an ordinary action.

5. ——: argument to jury: improper remarks by counsel for state.

VII.   Complaint is made of the refusal to give to the jury certain instructions requested by the defendant.

**6. MURDER:** These instructions are either in substance
self-defense: embodied in the charge by the court,
instructions:
use of word or they were not required to be given in
courageous.
any view of the case.    It is urged that cer-
tain paragraphs of the instructions given by the court
are erroneous.    We have examined the charge through-
out with care, and have to say that we think the objec-
tions thereto are not well taken.    We desire to make
special mention of but one objection.    The twenty-sec-
ond paragraph of the charge is as follows:    "The
killing of an assailant is justifiable on the grounds of
self-defense only when it reasonably appears to be the
only means of saving the life of the party assaulted, or
preventing some great injury to his person.    If it is
apparent that the danger which seemed to threaten him
can be avoided or prevented by any other means in
his power, he is not justified in taking the life of his
assailant.    In determining whether the defendant in
this case was justified in using a dangerous weapon in
self-defense, the inquiry is not whether danger to him
existed in fact, but whether, from all the attendant and
surrounding circumstances at the time of the conflict, it
reasonably appeared to the defendant, as a reasonable,
*prudent, courageous* and *cautious man*, that he was
about to suffer death or great bodily harm at the hands
of the said Louis Miars, and if it so appeared to him,
and if it further appeared to him to be the only means
of saving his life, or preventing great bodily harm, he
would be justified; otherwise, he would not be justi-
fied."    The use of the word "courageous" is claimed
to be erroneous.    It is not to be denied that a strict con-
struction of the language employed is inaccurate.    If
the court had used the word "reasonably" instead of
"reasonable" in connection with the words "prudent,
courageous and cautious," it would be within the rule
of responsibility prescribed by this court in numerous
decisions.    In view of the fact that the rule applicable
to self-defense is correctly and accurately stated in
several other paragraphs of the charge, we think the

court surely intended to qualify the word " courageous " by the word "reasonably," and we think the failure to do so cannot be said to be erroneous.    The instructions are not necessarily repugnant to each other.    A careful examination of the whole record has led us to the conclusion that the judgment should be AFFIRMED.