STATE OF IOWA v. GUY HELM, Appellant.

**Murder: Bail.** One charged with murder in first degree and convicted of the second degree is, in effect, acquitted of the first degree, and when his conviction for murder in the second degree is set aside on appeal, he is entitled to be admitted to bail.

**Uncommunicated threats** of deceased are admissible, where self-defense is claimed, as tending to show an intent on his part to carry them out in the encounter between himself and defendant.

**Instructions.** The court need not give one which contains the foreign words "*quo animo.*"

SAME. The word "contradicted" in view of its context, means disputed, not disproved.

Practice. Where deceased and his brother are charged with having assaulted defendant in the encounter in which the killing was done, it is not error to allow counsel employed by the brother to close the argument for the state, the brother not being on trial and it not appearing that counsel acted for any interest special to his employer. Nor is it material that the court had appointed an attorney to assist the prosecution.

MISCONDUCT OF COUNSEL. Counsel, to explain non presence of witnesses for the state, in effect, charged in the closing that certain witnesses for the defense had been bribed. The court approved this because it was in response. It does not appear that the charge was justified or what it was responsive to, except that the defendant had called atten. tion to the failure of the state to produce such witnesses. *Held*, error.

FAILURE TO PRODUCE WITNESS. The state is not bound to call all whose names are indorsed on the indictment.

CHANGE OF VENUE. Where evidence of prejudice is not strong and in conflict, overruling of motion to change will not be interfered with.

*Appeal from Keokuk District Court.*—HON. D. RYAN, Judge.

THURSDAY, DECEMBER 13, 1894.

THE defendant was accused by indictment of the crime of murder in the first degree, was tried by jury, found guilty of the crime of murder in the second degree, and was adjudged to be imprisoned in the penitentiary at Ft. Madison at hard labor for the term of twenty years. From that judgment he appeals.— *Reversed.*

*C. H. Mackey* and *G. D. Woodin* for appellant.

*John Y. Stone*, attorney general, and *Thos. A. Cheshire* for the state.

ROBINSON, J.—On the first day of October, 1892, one Walter Clark was shot and killed by the defend-

ant. The killing is not denied, but it is insisted that it was done in self-defense.

I. The shooting occurred a short distance east of Fremont, in Mahaska county, but in the county of Keokuk. The indictment was returned by the grand jury on the seventh day of October, 1892, and on the same day the defendant was arraigned and pleaded not guilty, and the cause was continued. On the first day of the November term of the court which commenced on the twenty-second day of the next month, the defendant filed a petition for a change of the place of trial from Keokuk county to some county of the district other than Mahaska county. The petition, as ground for removal, alleged excitement and prejudice against the defendant in the county, and was supported by his affidavit, the affidavits of his two attorneys and of three other persons. The affidavit of the attorneys was the only one which specified facts which tended to show excitement and prejudice. That described the place of the shooting, and alleged that there were numerous newspapers in the counties of Keokuk and Mahaska, nearly all of which had given what they claimed to be the facts of the case, and, as thus given, they showed that the defendant had deliberately prepared to shoot the deceased on the night he was killed; that the newspapers which had not published such statements were noncommittal; and that, in consequence of these facts, there was great excitement and prejudice against the defendant in both counties, and for that reason, deeming him unsafe in Keokuk county, the authorities had removed him for safety to the jail of Linn county, where he remained until it was thought safe to return him to Keokuk county. Numerous counter affidavits were filed, which fully contradict the allegations of excitement and prejudice. The affidavit of the sheriff was also filed. That shows that the defendant was

removed from Keokuk to Linn county, in consequence
of rumors of threatened violence to him, but that the
day after the removal, the rumors were ascertained to
be without foundation, and that, after remaining in
Linn county but four days, the defendant was returned
to Keokuk county, in which he has since been kept.

The showing for a change of the place of trial
was not strong, and was fully rebutted by the
counter affidavits. It is clear that the district
court did not abuse its discretion in overruling the
petition for a change. *State v. Foster*, 91 Iowa 164, 59
N. W. Rep. 9; *State v. Belvel*, 89 Iowa, 405, 56 N. W.
Rep. 548; *State v. Kennedy*, 77 Iowa, 211, 41 N. W.
Rep. 609. The showing for a change of the place of
trial considered in the case of *State v. Crafton*, 89 Iowa,
109, 56 N. W. Rep. 257, which is relied upon by the
appellant, was much stronger than that made in this
case.

II.   G. W. Lafferty was appointed by the district
court at the request of the county attorney to aid in
the prosecution of the case. The county attorney,
Lafferty, and attorney C. M. Brown, were present
during the trial, and assisted in the prosecution. It
also appears that J. B. Bolton was employed by
Byron Clark, a brother of the deceased, to aid
in the prosecution. At the close of the evidence,
the defendant objected to Mr. Bolton's making an
argument in the case, especially the closing one, for
the reasons that the other attorneys for the state named
had assisted in the trial, that Bolton was acting for
Byron Clark, and that the evidence showed that, in
killing Walter Clark, the defendant acted in self-
defense, against a joint attack made by Walter and
Byron. The objection was disregarded, and Bolton
was permitted to make the closing argument to the
jury. In this there was no error. It was not shown
that Bolton was employed to protect any interest which

Byron Clark had in the prosecution separate from the state. Clark was not on trial. His statement is that he employed Bolton to help try the cause, and we do not discover any reason for concluding that Bolton sought to promote any special interest that his employer may have had. In the case of *State v. Shreves*, 81 Iowa, 623, 47 N. W. Rep. 899, it was held admissible, under the existing statutes, for a prosecuting witness or a party complaining to employ counsel, with the approval of the court and county attorney, to assist in the trial of a criminal case. We do not think the fact that in this case the court had appointed an attorney to assist in the prosecution had any material bearing on the right of Byron Clark to employ Mr. Bolton, so long as his employment was approved by the county attorney and the court; and the record justifies the conclusion that there was such approval.

III. In the closing argument of the state to the jury, Mr. Bolton used the following words: "I tell you, gentlemen, money talks. Oliver Helm, Amanda Helm, and Ed. Short were witnesses before the grand jury and at the coroner's inquest. They were then witnesses for the state. Now they are witnesses for the defendant. We have been prepared for this thing. We knew that someone had been to Ottumwa and Bonaparte, and were prepared for the evidence from there." The defendant objected to these remarks, and asked the court to have them reduced to writing. The court sent a bailiff for the reporter, who was not in the court room; but, before the reporter appeared, the court said, in the presence and hearing of the jury: "We will not wait for the reporter. The court has a distinct recollection of the language used by counsel. The court considered the argument legitimate, but, if you (addressing an attorney for the defendant) want the remarks made a matter of record, the same may be done." The record

shows a reason for the statement and ruling of the court in words as follows: "The judge's reason for so remarking that he so regarded the remarks made by said Bolton to the jury was that the said remarks were in reply to remarks of defendant's attorney that the state had not called as witnesses Oliver Helm, Amanda Helm, and Ed. Short, witnesses at the coroner's inquest, and before the grand jury." What the statements thus made on behalf of the defendant were is not otherwise shown by the record. The defendant insists that he was prejudiced by the statements of Bolton, especially by the first sentence, and that its prejudicial effect was greatly increased by what was said by the court in apparent approval. The inference which would naturally be drawn from the words, "I tell you, gentlemen, money talks," taken in connection with the remainder of the statement, is that the witnesses had been influenced in giving their testimony by the corrupt use of money. Their testimony, as given on the trial, was favorable to the defendant; and any unauthorized statement which would make them appear to the jury to be less credible than they were in fact, would have been prejudicial to him. That the words in question were calculated to cast odium upon the witnesses to which they referred, and cause their testimony to have less weight with the jury than it would have had if the words had not been spoken, is, we think, evident, and, unless justified by something shown or said on the trial, they are sufficient reason for reversing the judgment of the district court. See *Henry v. Railway Co.*, 70 Iowa, 233, 30 N. W. Rep. 630; *Whitsett v. Railway Co.*, 67 Iowa, 159, 25 N. W. Rep. 104. We find nothing in the record to justify their use. The names of the witnesses designated are indorsed on the indictment, but what testimony the witnesses gave before the grand jury, or at the inquest, is not shown. Nothing set out in the

record justifies the charge of bribery. It is shown that the defendant's attorney referred to the fact that the state had not called the witnesses named, but the reason given by the court contains no intimation that any reference was made to the use of money. Our attention has not been called to any conflict between the testimony given by these witnesses on the trial of the cause and that, if any, which they gave elsewhere; and the charge that they had been bribed to testify as they did was not authorized, and was of a nature to be prejudicial. We can not say that it did not have that effect.

IV. The defendant asked the court to instruct the jury as follows: "(1) When the question is, what was Walter Clark's attitude at the time of the fatal encounter, recent threats made by him may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to defendant. The evidence is not relevant to show the *quo animo* of the defendant, but may be relevant to show that, at the time of the meeting, the deceased was seeking defendant's life. (2) It is material in this case to show Walter Clark's attitude at the time of the fatal encounter, and for that purpose recent threats are relevant even though such threats were not communicated to the defendant. (3) Recent threats may become relevant to show that at the time of the meeting of defendant and Walter Clark, at the time of the killing of Walter Clark, that Walter Clark was seeking defendant's life." These instructions were refused, but in lieu thereof was given the following: "Evidence has been offered tending to prove that at Fremont, a few hours before the homicide, the defendant and Walter Clark had a difficulty, disagreement, or quarrel, and that at that time certain threatening language was used by the said Walter Clark toward the defendant, both there and on his way

homeward. These statements, both in whole or in part, have been contradicted by other evidence. It is for you to determine from the evidence in this case whether or not such threatening language was used; and, if you find it established by the evidence that such threats or threatening language was used on the part of Walter Clark at the time in question, this may be considered by you as tending to prove the state of feeling of said Walter Clark at the time of the conflict which resulted in his death; and, if established, it would be competent evidence bearing upon the question as to whether or not the said Walter Clark began the conflict or was the assailing party."

The appellant criticises this paragraph for various reasons, one of which is that it does not refer to uncommunicated threats. This is not well founded. Some of the evidence tends to show that the deceased, while on his way home from Fremont, just before the shooting, made threats against the defendant, which were not communicated to him. Those are referred to in the charge, and are necessarily included within its provisions.

Another ground of criticism is that the paragraph quoted does not state that threats "may become relevant to show that, at the time of the meeting, deceased was seeking defendant's life," but restricts consideration of them to the question, "Who commenced the fight?" It was said in *State v. Maloy*, 44 Iowa, 114, that threats not communicated to the defendant are immaterial, because they could not have influenced his conduct, but the question now before us was not considered in that case. In *State v. Elliott*, 45 Iowa, 490, it was said that the decided weight of authority holds that threats uncommunicated are inadmissible, and that "the only exception to the rule seems to be that, when evidence had been given making it a question whether the defendant had perpe-

trated the act in defense of his person against an attempt to murder him or inflict some great bodily injury upon him, violent threats made by deceased against the defendant a short time before the occurrence may be proved, though not communicated." This court did not state the purpose for which such evidence may be received in the exceptional cases, and what that purpose is has not been decided by this court. In this case the threat alleged to have been made by the deceased, and not communicated to the defendant, was that the deceased, if he found the defendant, "would cut his damned guts out." It was shown that there was an affray at the time of the shooting between the defendant on one side, and the deceased and his brother Byron, on the other, during which the defendant was cut twice with a knife, and there is evidence which tends to show that a knife was found in a hand of the deceased after he was shot. The defendant contends that the wounds received by him were inflicted by the deceased. The district court, by its rulings and charges, held, in effect, that evidence of the threat was competent as tending to show who began the conflict, but not to show the intent with which it was commenced. Threats against the life of a person charged with a felonious homicide, uncommunicated to him at the time of the act, are not admissible to show the motive or intent which influenced him to commit it. But, if it be uncertain and material to determine whether the deceased was not the aggressor in the conflict which led to his death, the better rule, in our opinion, is that evidence of recent threats made by the deceased against the life of the defendant is admissible as tending to show that in the fatal encounter the deceased was seeking to carry out his threats. *Wiggins v. People*, 93 U. S. 465; *Stokes v. People*, 53 N. Y. 174; Whart. Crim. Ev., section 757, and notes; *Keener v. State*, 18 Ga.

194; *Campbell v. People,* 16 Ill. 18; *Holler v. State,* 37 Ind. 57; *People v. Arnold,* 15 Cal. 476; *People v. Scoggins,* 37 Cal. 676; *State v. Turpin,* 77 N. C. 473; *Burns v. State,* 49 Ala. 370.

The first instruction asked by the defendant was properly refused in the form in which it was asked, for the reason that it contained words not in the English language, which the jury might not have understood; but the instructions asked embodied a correct principle of law, which should have been, but was not, set out in the charge.

A further objection made to the paragraph of the charge quoted is that it invaded the province of the jury in stating that certain statements, in whole or in part, had been contradicted by other evidence. We think it is evident from the paragraph as a whole that the word "contradicted," is used in its ordinary sense, and that it was not meant to say that the statements had been disproved.

V. The appellant complains that the state did not examine as witnesses certain persons whose names were indorsed on the indictment. The state was not under obligation to call such persons as witnesses. *State v. Dillon,* 74 Iowa, 655, 38 N. W. Rep. 525. Moreover, all the persons referred to testified as witnesses for the defendant, and he had the benefit of their knowledge.

VI. The appellant asks that, in case of a reversal of the judgment of the district court, he be admitted to bail. The trial of the defendant on the charge of murder in the first degree, and his conviction of the crime of murder in the second degree, is, in effect, an acquittal of the crime first named, and he can not again be placed on trial for it. *State v. Tweedy,* 11 Iowa, 352; *State v. Clemons,* 51 Iowa, 274, 1 N. W. Rep. 546. He now stands as one charged with the crime of murder in the second degree. Section 4107

of the Code provides that "all defendants are bailable, both before and after conviction, by sufficient surety, except for offenses heretofore punishable with death, under the laws of this state, where the proof is evident or the presumption great." The crime of murder in the second degree has not heretofore been punishable with death under the laws of this state; therefore the defendant is now bailable, unless he is within the provision of chapter 103 of the Acts of the Seventeenth General Assembly. That provides that "no defendant convicted of murder shall be admitted to bail." In *Baldwin v. Westenhaver*, 75 Iowa, 547, 39 N. W. Rep. 882, it was contended that one convicted of murder in the second degree was entitled to be admitted to bail while his appeal from the judgment of conviction was pending in this court; but it was held that such a case was covered by the provisions of chapter 103 quoted, and that bail could not be taken. It is true that in this case the defendant has been convicted of the crime of murder, and he appears to be within the letter of the statute; but by this reversal of the judgment of the district court that conviction is set aside, and although the defendant now stands charged with the crime of murder in the second degree, yet he so stands as one unconvicted, and is entitled to the rights and privileges of a person in that condition. It follows that he is entitled to be admitted to bail, and the amount he is required to give we fix at the sum of five thousand dollars.

The judgment of the district court is REVERSED.