STATE OF IOWA v. JOHN BUTLER, Appellant.

**Criminal law:** ASSAULT WITH INTENT TO MURDER: SELF-DEFENSE: EVIDENCE. Where an officer becomes the aggressor in attempting to carry out a threatened arrest, for which he has no authority or cause, the other party is justified in defending himself. In the instant prosecution for assault with intent to murder, the evidence is held to show that the officer had no cause to arrest the defendant and was himself the wrongful assailant in the affray.

**Same:** REJECTION OF EVIDENCE FOR FAILURE TO STATE ITS PURPOSE. On a criminal prosecution, evidence of the prosecutor's previous ill will and threats made toward the accused is competent, on the question of which one of the two was the aggressor: And upon an offer of such evidence it should not be rejected simply because counsel does not state the purpose of offering the same, no request having been made of him to do so.

**Same:** SELF-DEFENSE: INSTRUCTIONS: BURDEN OF PROOF. An instruction relating to the right of self-defense, which fails to state that the jury must be satisfied "beyond a reasonable doubt" that accused was justified in using a deadly weapon in his defense, is erroneous, because permitting the jury to infer that the defendant has the burden on that issue.

*Appeal from Hamilton District Court.*—HON. C. E. ALBROOK, Judge.

TUESDAY, MARCH 8, 1910.

THE defendant was convicted of assault with intent to commit manslaughter, and appeals.—*Reversed and remanded.*

*D. C. Chase* and *G. D. Thompson,* for appellant.

*H. W. Byers,* Attorney-General and *Charles W. Lyon,* Assistant Attorney-General, for the State.

SHERWIN, J.—The indictment charged the defendant with an assault on Louis Young with intent to commit murder. At the time of the alleged assault, Louis Young was a member of the police force of Webster City, and the defendant was a resident of said city. At about five o'clock in the morning the defendant left his residence for the purpose, as he says, of taking an early train out of the city. He was going in the direction of the depot, accompanied by another man, when they met Young and a deputy sheriff of the county, Homer Howard, at a street intersection in the business part of the city. Young was then on duty, as we understand the record. The fight between Young and the defendant commenced at that place, and in the following manner, according to Young's testimony.

Young testified for the State:

Mr. Howard was with me. We saw Mr. Butler somewhere near Blankenbueler's building. A fellow by the name of Chas. Wedding was with him. They were walking west on the south side of the street going toward the crossing. When I and Mr. Howard got to the crossing, we stopped, and Mr. Wedding and Mr. Butler came to the crossing to about where we were, and Mr. Howard spoke to him, and he said, 'How are you, Homer?' Then he said to me: 'Mr. Young, I have something to say to you. What have you been saying about my place?' I told him that the best thing for him to do was to go home or I would arrest him. He said there couldn't nobody take him home, or some remark like that. I said, 'The best thing for you to do is to go home.' He had something in his hand, and Mr. Howard made some remark that he had something in his hand. He said he hadn't anything in his hand. I said: 'You have something in your hand. Give it up to Homer.' And then I said, 'If

1. CRIMINAL LAW: assault with intent to murder: self-defense: evidence.

you do not give it to Homer, I will arrest you.' He said,
'There can't no officer arrest me.' He didn't start towards
me. I started at Butler with a club, but I missed him
and did not hit him until he cut me. He struck me be-
fore I hit him. I busted the end of the billy a little and
knocked him down to his knees. Then he got up. He
struck me after he got up, and I struck him twice and
knocked him partway down. Homer Howard told me not
to hit any more.

Homer Howard testified for the State as follows:

Butler and Wedding came right up and stopped.
Butler walked up just a couple of feet from Young. He
stepped back. He said, 'I have something to say to you,
Young.' Young said, 'What is it?' Butler said, 'What
have you been talking about me and my place?' Young
told him he had better go home. Young asked him
what he had in his hand. I think perhaps Young told
me to grab his hand, and Butler turned and said: 'How-
ard, you leave me alone. Don't you touch me.' Young
said: 'He has got a knife. If you don't put the knife
up, I will hit you.' Butler said he was not afraid of
him or his club either. Young said he wasn't afraid
of him. Butler told him to leave him alone and there
would be no trouble. Then Young struck his first blow
and hit Butler on the arm, and after that he struck him
two or three times on the head or neck. He went down
on his knees once or twice.

The defendant's version of the transaction is as fol-
lows:

They were standing on the crossing when I came up.
Mr. Howard spoke to me, and I spoke to him. I said:
'Mr. Young, I have something to say to you. I would
like to know what you have been saying about my place.'
He said, 'I will throw you in,' and started after me with
his club. I stepped back and said, 'Keep your hands off
of me and there will be no trouble.' He kept coming
with his club and struck me. I threw up my arm, and
he struck my arm and paralyzed it. Then he called to
Mr. Howard to take hold of me.

Another witness for the State testified that he saw the encounter, and gave a somewhat different account of it; but it is shown by the weight of the evidence that he was greatly mistaken as to principal facts and was not in fact close enough to the parties to know as much about the transaction as the witnesses whom we have quoted. Young himself testified that the defendant was not intoxicated at the time in question, and that his only reason for arresting him was because he (the defendant) was looking for trouble. Unless it be a crime, or a breach of the peace, for a citizen to go quietly from his home to a public railroad station in the nighttime, the defendant was rightly on the street at the time in question. His question to Young was certainly not a breach of the peace, and hence furnished no warrant for his arrest, or for any interference with his personal freedom. It was Young's duty to maintain peace and good order; but, instead of performing such duty, he provoked a quarrel by threatening an arrest without any authority or cause therefor, and, by attempting to carry out such threat, he became the aggressor and the unlawful assailant of the defendant. The defendant was therefore clearly justified in defending himself.

The defendant offered testimony tending to prove Young's previous ill will toward the defendant and threats made by him. The testimony was competent on the question of which one of the two was the aggressor in the instant case, and its rejection was prejudicial error. *State v. Beird,* 118 Iowa, 474; *State v. Helm,* 92 Iowa, 540; *Wiggins v. Utah,* 93 U. S. 465 (23 L. Ed. 941). The State practically concedes the competency of the testimony, but says that defendant's counsel did not state to the trial court the purpose for which it was offered. That is true, but he was not asked the purpose for which he offered the testimony.. Some questions had been asked Young on cross-

2. SAME: evidence: rejection for failure to state its purpose.

examination which tended to lay a foundation for impeaching evidence, and, when the testimony in question was offered, the court asked counsel if he contended that he had asked Mr. Young that question. The answer was: "No, sir; that is not our theory of the matter at all." The objection to the testimony was then sustained. While it might have been better and fairer practice to have then disclosed the purpose for which the testimony was offered, counsel was not bound to do so, in the absence of a request therefor.

The trial court submitted to the jury the question whether the defendant was acting in self-defense at the time, and told the jury that, if it found from all of the evidence that the defendant had reason to believe that he was in imminent danger of losing his life or suffering great bodily injury, he would be justified in using a deadly weapon. Conversely, the jury was told that, if it found from the evidence, etc., then the use of a deadly weapon was not justified. The instruction is objectionable for the reason that the jury was not told therein that it must be satisfied beyond a reasonable doubt that the defendant was not justified in using a deadly weapon in self-defense. *State v. Shea*, 104 Iowa, 724; *State v. Sharp*, 127 Iowa, 526; *State v. Usher*, 126 Iowa, 287. The thought was not embodied in any instruction, and the jury may very easily have concluded that the burden in that respect was on the defendant.

*3. Same: self-defense: instruction: burden of proof.*

The legality of the grand jury returning the indictment is assailed. It being claimed that two members thereof were recalled and impaneled after they had been discharged for that particular term of court. It is not shown, however, that they were discharged for the term, and we think the complaint without merit.

On the entire showing made, there was no error in denying the defendant a change of place of trial.

Other points argued by the appellant need not be farther noticed because they are not likely to arise on a retrial.

For the errors pointed out, the judgment will be reversed, and the case remanded.—*Reversed* and *remanded*.

EVANS, J.—(Dissenting.)   As to the last ground of reversal, the trial court, by instruction No. 2, instructed that the burden was on the State to prove beyond a reasonable doubt "that the said assault was not made in self-defense of the person of the said defendant." This was sufficient on that question.

As to the other ground of reversal, the trial court had made a series of rulings adverse to defendant based on the ground that no ground of impeachment had been laid in the cross-examination of Young. The rulings were right in this respect, and no intimation was given to the court on the ground of the offer which is now urged. I think the ground of the offer now urged should have been stated to the court at that time.