STATE OF IOWA v. CHARLES DEAN, Appellant.

**Change of venue:** PASSION AND PREJUDICE: DISCRETION: EVIDENCE. Where the evidence in support and in resistance of a motion for change of venue, on the ground of passion and prejudice, presents a substantial conflict, the action of the trial court in overruling the motion will not be disturbed. In this action the evidence in support of a change consisting of newspaper comments is held insufficient to incite a disregard of the proper administration of the law, either on the part of the judge or jury.

**Criminal law:** FORCIBLE DEFILEMENT: ELECTION OF OFFENSES. In prosecutions for rape the state may be required to elect which of two or more acts it will rely upon; but under an indictment for forcible defilement, the gist of the offense lies in obtaining unlawful control over the person of prosecutrix, and by means of the force, menace or duress thus exercised accomplish her defilement, which need not necessarily be the result of force. So that all the acts of defilement during the continuance of the duress constitute one continuous transaction, and can be proven under one indictment.

**Evidence:** STATEMENTS OF WITNESS ON FORMER TRIAL: HOW PROVEN. The statute providing that a reporter's notes or a transcript thereof shall be admissible as a deposition for the purpose of proving the testimony of a witness on a former trial, does not exclude the evidence of one who heard and remembered such testimony, on the ground that the reporter's record is the best evidence.

**Criminal law:** EVIDENCE: STATEMENTS OF A CONFEDERATE. The statements of one engaged with defendant in the commission of a crime may be shown as against defendant, although made in his temporary absence.

**Same:** INCLUDED OFFENSES: INSTRUCTIONS. Where the evidence is such that there would be no justification for conviction of an included offense should the jury fail to find defendant guilty of the principal crime charged, failure to instruct on the subject of included offenses is not erroneous.

.Same: PREVIOUS CHASTE CHARACTER: INSTRUCTION. Where the court in a prosecution for forcible defilement told the jury to consider the evidence of previous chaste character of prosecutrix, on the questions of unlawful taking against her will and whether she was actually defiled, failure to specifically instruct on the question of whether she consented to the intercourse was not erroneous.

Same: CAUTIONARY INSTRUCTIONS: PREJUDICE. An instruction that the jury should not by their verdict lessen the protection the law throws around the innocent and virtuous female, nor in any degree disregard the legal rights of defendant, was not prejudicial as assuming that prosecutrix was innocent and virtuous.

*Appeal from Marion District Court.*—HON. J. H. APPLEGATE, Judge.

THURSDAY, JUNE 9, 1910.

DEFENDANT was convicted under an indictment charging him and one Van Gorkum jointly with forcible defilement committed upon one Josephine Muilenburg, and from this conviction he appeals. *Affirmed.*

*Hays & Amos,* for appellant.

*H. W. Byers,* Attorney-General, and *Charles W. Lyon,* Assistant Attorney-General, for the State.

McCLAIN, J.—I. The trial court overruled a motion for change in the place of trial to another county predicated upon a showing that at the December term, 1908, of the district court of Marion County, this defendant and Van Gorkum were indicted for the crime of rape committed upon this prosecutrix, and at the February term following Van Gorkum was tried and convicted of assault and battery; that the case as against this defendant was continued until the April term following; that in the meantime defendant was indicted for the offense of public

lewdness, this indictment being also continued to the April term; that at the April term the present indictment was returned against defendant and Van Gorkum, charging forcible defilement, and the indictment for rape was then dismissed; that this defendant was at said April term tried under this indictment for forcible defilement, and a verdict of guilty was returned against him, which was afterwards set aside by the trial court, whereupon his case was continued to the September term following, at which he was tried and convicted, the trial commencing on the 19th of October; that during and immediately following the trial of Van Gorkum in February, which resulted in his conviction for assault, the two newspapers published in the county seat called attention to the sensational nature of the charges against Van Gorkum and this defendant, and referred to the conviction of Van Gorkum for assault instead of rape as an outrageous perversion of justice, and they made sarcastic references to the insignificance of the punishment which could be imposed for the wrong done, the revolting nature of the acts which were testified to by Van Gorkum, and this defendant as a witness for him, being freely commented upon; that the same subject matter was again referred to by these newspapers after the conviction of this defendant in May, and the setting aside of the conviction by the trial court on a motion for new trial based upon alleged errors of law in the exclusion of certain testimony offered for the defendant; that the same newspapers had in the meantime commented upon two crimes against women committed in Ottumwa, drawing inferences therefrom to the discredit of criminal procedure in our courts; and that in general these publications had indicated an excited state of feeling on the part of the public in Marion County with reference to the failure to adequately punish Van Gorkum and this defendant for the criminal transaction with which they were charged to have been connected.

In support of defendant's motion, which was filed September 28, an affidavit was presented, signed by nine residents of the county, stating that in their judgment there was such a state of excitement or prejudice caused by the publication of damaging and vilifying articles and editorials, together with public discussions, that defendant could not have a fair and impartial trial in said county. In a resistance to this motion,. the county attorney stated facts tending to show that the publications referred to could not have reached any considerable portion of the electors of the county; that the affiants, whose statements were relied upon for the defendant, lived in the town of Pella and the immediate vicinity thereof, and did not give a fair expression of the feeling existing in the minds of the people of the body of the county; and that any prejudice which may have existed against the defendant among the electors of the county at large by reason of the publications complained of had died out by virtue of the lapse of time since they had been made. In support of this resistance, affidavits were presented, made by six residents of different townships in the county, to the effect that in their belief there was not such excitement and prejudice in the county as would prevent the procuring of a jury which would be entirely fair and impartial toward defendant.

Now, we may concede that the newspaper comments were unfair toward the jury which returned a verdict of assault only against Van Gorkum, and to the court which set aside the conviction of this defendant

1. CHANGE OF VENUE: passion and prejudice: discretion: evidence.

for errors of law committed on his trial, and we may concede further that the criticism on the courts in general with reference to the procedure in criminal cases was unwarranted and unfortunate in its tendency to bring the proceedings of our courts in general into disrepute. But we find nothing in the articles tending to incite a disregard of law on the

part of the community, nor likely to cause a judge or jury to depart from their sworn duty in the administration of law in the case of this defendant. The showing in this case is quite similar to that commented upon in the cases of *State v. Icenbice,* 126 Iowa, 16, and *State v. Brown,* 130 Iowa, 57, in each of which this court refused to interfere with the discretion exercised by the trial court in overruling a motion for a change of place of trial. The general rule recognized in these cases and in the more recent case of *State v. Hoffman,* 134 Iowa, 587, that where there is- a substantial conflict as to the existence of passion and prejudice likely to affect the result of the trial, the discretion of the lower court in overruling a motion for a change will not be interfered with on appeal, is too well established to require the citation of further authorities.

It is true that in *State v. Crafton,* 89 Iowa, 109, there was a reversal on the ground that under the showing made in that case as to sensational statements against the defendant in the newspapers immediately after the alleged commission of the crime, a change of venue should have been granted. But in the case before us the trial of Van Gorkum as to which the most serious complaints were made was had in February, the first trial of this defendant was held in May, and the motion for change was not made until just preceding the trial in October at which defendant was convicted. If there had been an application for change of place of trial or for continuance in May on account of the alleged prejudice in the county, the showing would have been more persuasive and entitled to more serious consideration; but it was certainly for the trial court to say, under the circumstances as shown to him in October, whether any prejudice that may have existed against defendant such as would probably prevent his having a fair trial had not so far subsided as that an unbiased jury could be secured, and there is not the slightest showing that the jury which did finally convict him was influ-

enced in any way by passion or prejudice. Under the circumstances of the case, we are well satisfied that the ruling of the trial court should not be interfered with.

II. The evidence for the prosecution tended to show that on the evening of October 8, 1908, in the town of Pella, this defendant and Van Gorkum, who was jointly indicted with him, took the prosecuting witness against her will into a buggy and, preventing her from escaping, drove a mile or two into the country, where they took her into a field, and, by means of mutual assistance of each other in restraining her voluntary actions, they each had intercourse with her; that, returning with her in the buggy, they took her to the lodging room of one Visser and kept her there in restraint all night, where each of them and also Visser himself had intercourse with her; and that she did not escape from Visser's room until afternoon of the next day. At the time of the commission of these acts the prosecuting witness was a girl under seventeen years of age, but over the age of consent.

2. CRIMINAL LAW: forcible defilement: election of offenses.

At the close of the evidence for the prosecution the defendant moved the court to require an election on the part of the state as to whether it would rely for conviction on the evidence relating to the intercourse had in the country or on the intercourse had in Visser's room, and defendant now complains of the action of the court in overruling this motion. If the prosecution had been for rape, the duty of the state to elect which transaction was relied upon would have been plain. *State v. King,* 117 Iowa, 484. And it is insisted for defendant that the offenses of forcible defilement and rape are kindred offenses, and that the same rule should be applied to each. The statutory definition of "forcible defilement" is found in Code, section 4757, which provides that: "If any person take any woman unlawfully and against her will, and by force, menace or duress compels her to marry him or

any other person, or to be defiled, he shall be fined not exceeding one thousand dollars, and imprisoned in the penitentiary not exceeding ten years." The offense here described differs from that of rape, in that, if the woman is taken against her will, subsequent intercourse with her constitutes a crime, although there is not the resistance to the consummation of the act which is essential in rape. The statute seems to be intended to cover cases where persuasion or artifice is employed to obtain control over a woman for the purpose of having intercourse with her, although the object is finally accomplished without the immediate use of force. *Beyer v. People,* 86 N. Y. 369; *Schnicker v. People,* 88 N. Y. 192; *State v. Fernald,* 88 Iowa, 553; *Pollard v. State,* 2 Iowa, 567. The gist of the offense is the taking of the woman unlawfully and against her will and defiling her by means of force, menace, or duress thus exercised, and it differs therefore from rape, which involves only a violation of her person by force. This difference, as we think, clearly indicates that all the acts of defilement during the continuance of the duress following the unlawful taking are elements of one continuous criminal transaction, and may be proven under one indictment.

If two indictments had been found against this defendant for forcible defilement of the prosecutrix, one of them based on the intercourse had in the country, and the other on the intercourse had in Visser's room, we think that a conviction or acquittal under one of them would have been a bar to a trial under the other, if it appeared that the duress exercised by the defendant over the prosecutrix was continuous and covered both acts of intercourse. Cases cited from other states in behalf of appellant to support his contention that the prosecution should have been limited to reliance upon one act of intercourse as a ground for conviction are in the main of rape or seduction, which we think are not in point. Our attention

has not been called to any case in which the very question here under consideration has been discussed. We reach the conclusion, therefore, that the court did not err in refusing to require the prosecution to elect on which of the two acts of intercourse it relied to sustain a conviction.

III. As tending to furnish the corroborative evidence of the connection of the defendant with the commission of the crime which is required by statute, the prosecution introduced a witness who, over the objection of defendant, was allowed to testify that he was in the courtroom during the trial of Van Gorkum, already referred to, and that on such trial this defendant testified to his own act of having intercourse with the prosecuting witness in the country, and in Visser's room. Counsel for defendant concede the competency of such testimony as establishing an admission on the part of defendant furnishing the necessary corroboration, but contend that, as the testimony of this witness given in that connection was taken down in shorthand, the shorthand notes of such testimony or the translation thereof by the reporter would constitute the best or primary evidence as to what such testimony was, and that a witness who heard the testimony should not have been allowed to detail it. Counsel rely upon the statutory provision that the shorthand notes or a transcript thereof shall be admissible as a deposition for the purpose of proving what the testimony of a witness was on a former trial as excluding the evidence of one who was present and heard such testimony. The provision relied upon is as follows: "The original shorthand notes of the evidence, or any part thereof, heretofore or hereafter taken upon the trial of any cause or proceeding, in any court of record of this state, by the shorthand reporter of such court, or any transcript thereof, duly certified by such reporter, when material and competent, shall be admissible in evidence on any retrial of the case

3. EVIDENCE: statements of witness on former trial: how proven.

or proceeding in which the same were taken, and for purposes of impeachment in any case, and shall have the same force and effect as a deposition, subject to the same objections so far as applicable." Code Supp. sec. 245a. We see nothing in the language of the statute to indicate an intention that this method of proof shall exclude the oral testimony of a witness who heard the evidence as to what it was. Prior to the enactment of this statutory provision, this court held that the shorthand reporter's notes of the testimony of a witness on another trial were not the best evidence in such sense that one who heard and remembered the former testimony might not testify as to what it was. *State v. Mushrush,* 97 Iowa, 444. Cases from other states cited by counsel, holding that the sworn statements or testimony of a witness on a coroner's inquest or a preliminary examination, which statements are required by statute to be signed by the witness, constitute the best evidence of what such statements or testimony was, and that parol evidence thereof is inadmissible as secondary, are not in point, for the provision that the statement or testimony shall be signed by the witness is evidently intended to give to such statement or testimony added weight by enabling the witness to correct his statements before signing if he shall find that the minutes are not a proper embodiment of what he desires his statement or testimony to be. See *State v. Prater,* 26 S. C. 198, 613 (2 S. E. 108); *Powell v. State* (Miss.), 23 South. 266. The case of *People v. Gardner,* 98 Cal. 127 (32 Pac. 880), which is also relied upon, relates to a statutory provision wholly different from that here involved, and throws no light upon the question now before us. We reach the conclusion that evidence as to the statements of a witness on a former trial which would have been competent prior to the enactment of the statutory provision above quoted are not rendered incompetent by that provision. It is conceded by counsel that if the testimony as to what this defendant

said on the trial of Van Gorkum was admissible, it furnished the corroborating evidence required by the statute to take the case to the jury, and nothing further on the subject of corroboration need be said.

IV. It appears that when defendant and Van Gorkum brought the prosecuting witness back from the country in the buggy they took her to the foot of the stairway leading to Visser's room, where Van Gorkum took the prosecutrix out of the buggy and pushed her up the stairway, while defendant drove away, and objection was made to the introduction of evidence as to what the prosecutrix said to Van Gorkum and what Van Gorkum did in defendant's absence. But it appears that defendant was absent only a short time and returned before Van Gorkum and prosecutrix had reached the top of the stairs, and that his absence was accounted for by the necessity of making some disposition of the horse and buggy. On defendant's return he assisted in forcing prosecutrix to go to Visser's room, and the evidence leaves not the slightest doubt that Van Gorkum's acts in the meantime were in pursuance of a common plan on the part of defendant and Van Gorkum. What was said and done during defendant's absence was a part of the continuous transaction, and the evidence was properly admitted as against this defendant. The theory of counsel seems to be that only where a conspiracy is charged in the indictment can evidence be admitted as to the conduct of one conspirator in the absence of the other. Plainly the question is not whether a conspiracy is charged, but whether the act of one of those engaged in a common enterprise may be shown as against the other, and, as we understand it, this may always be done where the act is in pursuance of a general plan. Here the proof of the conspiracy such as to charge defendant with the acts of Van Gorkum in carrying out their common purpose was ample, and plainly there was no error in allow-

<small>4. CRIMINAL LAW: evidence: statements of a confederate.</small>

ing the state to show what Van Gorkum did in pursuance of that common plan during the brief absence of defendant. *State v. Walker,* 124 Iowa, 414.

V.   The trial court instructed the jury that the crime charged included the offense of assault and battery and simple assault, but further instructed that under the evidence the jury would not be justified in finding defendant guilty of either of said lower degrees of crime, and that they should either find the defendant guilty of the crime of forcible defilement or return a verdict of not guilty. This court has repeatedly held that if under the evidence there would be no justification for a conviction of an included offense should the jury fail to find the defendant guilty of the principal offense charged, it is not error to fail to instruct the jury as to included offenses. *State v. Reasby,* 100 Iowa, 231; *State v. Cater,* 100 Iowa, 501; *State v. Atkins,* 122 Iowa, 161; *State v. Sherman,* 106 Iowa, 684; *State v. King,* 117 Iowa, 484; *State v. Stevens,* 133 Iowa, 684.

5. SAME: included offenses: instructions.

VI.   Evidence was introduced for defendant tending to show that the prosecutrix was reputed in the community to be unchaste before the commission of the alleged crime by defendant, and the jury was instructed to take into account her reputation for chastity as bearing upon her credibility as a witness, and also as bearing upon the question whether or not she was in fact unlawfully taken against her will by the defendant and by him defiled by means of force, menace, or duress. But the jury was also told that it was not essential that the state establish the previous chaste character of the prosecutrix. The complaint made of this instruction is that it does not specifically state to the jury that such evidence should be construed as bearing upon the question whether prosecutrix consented to the intercourse. But the court did in another portion of the instruction direct the jury to take such evidence

6. SAME: previous chaste character: instruction.

into account in determining whether prosecutrix was in fact unlawfully taken and against her will, and also whether she was in fact defiled; and, as it was unnecessary to prove that the intercourse was against her will, we think the court gave to the defendant all the benefit of the testimony in regard to the reputation of the prosecuting witness for unchastity to which he was entitled.

VII. In another instruction, cautionary in its nature, the jurors were told that they should not by their verdict "lessen the protection the law wisely designs to throw around the innocent and virtuous female," nor "in any degree disregard the legal rights of the defendant as they are explained in these instructions." The objection made to this instruction is that it assumes prosecutrix to have been "an innocent and virtuous female." We think the instruction capable of no such construction. The object of the prosecution was not to protect the prosecutrix individually, but to protect women in general, most of whom are innocent and virtuous, against such atrocious and revolting conduct as that charged to the defendant, and no possible prejudice could have resulted to defendant from the use of this language.

7. SAME: cautionary instructions: prejudice.

VIII. Some complaint is made as to the definition of the crime charged as given by the court; but, without setting out the instruction at length, it is sufficient to say that we find therein no error of which the defendant can complain.

The judgment of the trial court is *affirmed.*