STATE OF IOWA, Appellee, v. J. R. HODGES, Appellant.

**CRIMINAL LAW: Change of Venue—Existence of Prejudice Matter 1 of Opinion.** The overruling of a motion for a change of venue on the ground of popular prejudice against the accused will not be disturbed when the existence or nonexistence of such popular feeling rested on a mere matter of *opinion* of divers witnesses.

**CRIMINAL LAW: Change of Venue—Remote Newspaper Publications. 2** The court may not necessarily say that one newspaper article containing a sinister reference to the people's taking the law into their own hands is sufficient to prejudice the people of an entire county, especially when such publication was some eight months prior to the trial.

**CRIMINAL LAW: Reception of Evidence—Waiver by Accused of 3 Right to Testify.** A request by an accused that he be permitted to testify in his own behalf is properly denied when presented for the first time after both parties had rested, and then in language which did not reveal that he, himself, was the person whose testimony was desired, and when the request in definite form was withheld until after the argument had commenced.

*Appeal from Montgomery District Court.—O. D. WHEELER,*
Judge.

JUNE 24, 1924.

REHEARING DENIED DECEMBER 11, 1924.

INDICTMENT for manslaughter. Upon a plea of not guilty,
a trial was had, and verdict of guilty rendered. Judgment being
pronounced thereon, defendant has appealed.—*Affirmed.*

*John J. Hess* and *B. A. Shaver,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,*
Assistant Attorney-general, *Floyd E. Billings,* County Attorney,
and *W. E. Mitchell,* for appellee.

EVANS, J.—By the verdict, the defendant was found re-
sponsible for the death of Mrs. Ida Anderson, and was found
guilty of manslaughter. The death of Mrs. Anderson resulted
from an automobile collision, which was caused by very reckless
conduct on the part of the defendant. It is upon such reckless
conduct that the charge of manslaughter was predicated. The
material testimony relied on by the State for conviction was
wholly undisputed, except in one rather unimportant respect.
It appeared from the testimony offered by the State that the de-
fendant was drunk at and before the time of the collision. The
testimony offered by the defendant negatived this contention,
and was to the effect that the defendant was not drunk. No
other material fact relied on by the State is traversed by the
testimony. The accident resulting in the death of Mrs. Ander-
son occurred about 3:30 P. M. of June 3, 1922. While she and
her husband were in an automobile and traveling westward, they
stopped upon the highway in front of the home of the witness
Campbell. The husband left the automobile, and went to or near
the residence, where he engaged in conversation with Campbell,
Mrs. Anderson remaining in the automobile, which then occupied
a position on the crest of a hill, and on the right side of the high-

way, and was facing westward. Shortly thereafter, the defendant approached over the same highway from the east, driving a high-powered car, at a speed of approximately 70 miles an hour. At such speed, he collided with the Anderson car. The force of the defendant's car carried the Anderson car forward along the road for a considerable distance, and finally overturned it. It also penetrated the gas tank and set the car afire. Mrs. Anderson became pinned under the car, and was then and there burned to death, in the presence of her husband and Campbell, who made heroic efforts to save her, without avail. In such efforts, the husband received burns which resulted fatally also to him. That such an event should stir a community both with sorrow and indignation may readily be taken for granted. The principal complaint presented for our consideration is that the defendant was denied a fair and impartial trial because he was denied a change of venue from the county of Montgomery, where these events occurred. A criminal charge was filed against the defendant immediately following the accident. His preliminary hearing was had a few days thereafter, wherein he was bound over to the grand jury and admitted to bail. An indictment was returned against him on October 30, 1922, and his trial was commenced on February 26, 1923. On January 3, 1923, he filed his petition for a change of venue, on the ground of prejudice against him in the community. This petition was resisted by the State and was overruled by the court. On January 10th, he filed a second petition to the same effect, which was also overruled. On February 23d, he filed a third petition to the same effect, which was also overruled. The principal errors assigned as a ground of reversal are predicated upon the refusal of the court to grant the change of venue.

I. The first application for change of venue was supported by the affidavits of the defendant himself and of four other affiants. The following from the affidavit of the defendant contains the substance thereof:

1. CRIMINAL LAW: change of venue: existence of prejudice matter of opinion.

"That at the time of said collision and since that time, there has been great excitement and prejudice against me in the community, which excitement and prejudice exists in Montgomery County, Page

County, and a part of Cass County; that following the occur-
rence upon which said indictment is based, many newspaper ar-
ticles were published in the community and in Montgomery
County, Iowa, and circulated in Cass County and in Page
County, which were unfair and unfavorable to me, and that like
articles were distributed in the newspapers published and cir-
culated in Page County, Iowa. * * * And there now exists great
excitement and prejudice against me in Montgomery County,
Iowa, and the same also exists in Page County and in a portion
of Cass County, Iowa. That by reason of the aforesaid, I can-
not obtain a fair and impartial trial upon the charge made
against me in Montgomery County.''

The following from the affidavit of J. W. Brummett con-
tains the substance of such affidavit and of affidavits of other
affiants:

''That I have conversed with many people in said county
with reference to said matter and have heard the same discussed;
that from what I know and have heard in connection with the
aforesaid matters, it is my belief that, because of excitement and
prejudice against him, it is impossible for the defendant to obtain
a fair and impartial trial of the charge made against him in
Montgomery County, Iowa.''

In addition to the foregoing, certain newspaper publications
were put in evidence, which will be considered later.

The application was resisted by the State, and the resistance
was supported by affidavits of affiants which negatived the claim
of defendant on the question of prejudice in the community. It
will be seen, therefore, that the question involved was one wholly
of opinion. Excepting in one respect, to be referred to later, no
specific or concrete fact was brought to the attention of the court
in support of defendant's contention that he could not obtain a
fair trial. There is nothing in this feature of the record that
would justify us in finding any abuse of discretion on the part
of the trial court. The recitals contained in the affidavits pre-
sented by the defendant are such as could be made without actual
bad faith in any criminal prosecution in any county where the
crime involved was of such a nature as to attract public atten-
tion.

In support of the later applications made, additional affidavits were filed, which contained some amplifications. What we have said, however, concerning the former affidavits is also applicable to the later ones, and we will not discuss them in further detail. We hold, therefore, that, so far as the recitals of the affidavits are concerned, they are not such as would justify us in finding an abuse of discretion on the part of the trial court.

II.   The more specific and concrete facts relied on by the defendant in support of his applications for change of venue consist of certain newspaper publications, copies of which appear in the record. These were: Red Oak Sun, issue of June 9, 1922; The Villisca Review of the same date, and of June 16th and June 23d; The Red Oak Express of June 5th; The Shenandoah Sentinel Post.

2. CRIMINAL LAW: change of venue: remote newspaper publications.

Taking these publications in the order here named, the article published by the Red Oak Sun contained the following caption:

### "A FATAL COLLISION.

"Mrs. Aaron Anderson Cremated Under Car.   Her Husband Probably Fatally Burned—Two Others Hurt—Jas. R. Hodges Still in Jail.

"His Paige Upset Anderson Car on Road—Fire Followed.

"The Dead:   Mrs. Aaron Anderson, Stanton, burned to death under the car when it turned over after collision."

The article itself was a comparatively dispassionate recital of the actual facts, as they appeared from the testimony on the preliminary hearing. It set forth literally the testimony of the witness Campbell at the preliminary hearing, he being the only surviving witness to the accident. The following excerpt from the article fairly indicates the spirit of fairness permeating the article.

### "What They Claim.

"People who were early on the scene of the accident disagreed about the cause of the tragedy. The hill over which Hodges was coming toward the west is a sharp one, and the road is narrow. Hodges claims that he did not see the car until he

came over the hill, while witnesses declare he could have seen it from a point 60 rods east of there. The exact position of the car when struck will probably have some bearing on the case. Witnesses at the inquest declared Hodges was driving at a high rate of speed, and there is no question that his car, wrecked as it was and with brakes set, went to the bottom of the hill before being stopped. The Anderson car was completely destroyed by the fire, and the Hodges car was badly wrecked, although it did not turn over. On account of the seriousness of the case, the Sun again refers to the testimony of Mr. Campbell, rather than give circulation to the many rumors.''

On the same date, June 9th, the Villisca Review published an account of the accident. This article also purports only to state facts. In the light of the undisputed evidence introduced at the trial and appearing in this record, this article was entirely fair. Its closing statement was as follows:

''Hodges claims he could not see the Anderson car as he approached it, and that it loomed up before him only after he reached the top of the hill, a few feet from it. However, a jury called by Sheriff Peterson investigated the circumstances of the collision, and after putting a car on the spot where the Anderson car stood when it was hit, they went east a quarter of a mile. They declared the car was visible for that distance, and they gave as their opinion that the wreck occurred through carelessness.''

In its issue of June 16th, this same paper gave an account of the funeral of Aaron Anderson, which was attended, as stated, by more than 1,500 people. The only reference contained in this article to the defendant was that he had been unable to secure bond. The same paper in its issue of June 23d contained an account of a preliminary examination, and set forth literally the testimony of the witness Campbell. The Red Oak Express of June 5th contained an account of the accident. The only portion of the account so published which is specifically complained of was the following:

''Sheriff C. E. Peterson went to the scene of the accident, and with a jury composed of Frank Shook, A. Q. Green, John

Johnson, and A. F. Campbell, investigated the accident. It was the opinion of this group of men that the accident occurred through carelessness. The witnesses placed a car in the alleged spot that the Anderson machine was left in before it was struck, and drove a quarter of a mile east. The car was plainly visible for a quarter of a mile, the witnesses declared.''

The foregoing comprises all the publications in Montgomery County. The Shenandoah Sentinel Post was a paper published in Page County, and having a circulation in portions of Montgomery County. It published an article under the caption ''The Ride of Death,'' which was republished by the Red Oak Express. This article also was free from any unfair statement of fact. It contained the following reference to the defendant:

''He goes to jail, and the officers guard the jail to prevent the people from wreaking summary justice upon him. Is it necessary that such tragedies as this must be told over and over, that innocent people must suffer and die month after month, before the aroused people can put a stop to the illicit handling of booze? There is no excuse anywhere at any time for the use of alcoholic drink, and the man who handles it or uses it is a potential murderer. Anyone is liable, when under the influence, to do just what that murderer did at Stanton. Men used to be excused for crimes when drunk, but there is no justification for such excuse. They know before they take the stuff into their stomachs that they become potential criminals. The man who, while under the influence of liquor, kills another should be treated exactly as if he committed premeditated murder; for when he drinks, he premeditates, or should premeditate murder. If the courts do not punish such men as they deserve, they will soon find that the outraged public will take the law into their own hands.''

The foregoing excerpt is the nearest approach to the ''inflammatory'' contained in any of the publications, and special complaint is directed to it. It is to be borne in mind, however, that none of these publications occurred later than June 23, 1922. Thereafter, the defendant obtained bail, and was at liberty until the day of his trial. He remained in the community and mingled with its people, and met with no affront during such time. He

was not indicted until October 30th, and was not put upon trial until February 26th. Abundant time had elapsed to enable calm judgment to prevail. Granted that the crime had not been forgiven, and that indignation, though calm, was still existent, this was entirely natural and legitimate. The actual conduct of the defendant, as appears from undisputed testimony, and the horrible result of it were such that they could never command approval or tolerance in any community. The last excerpt quoted, which is specially complained of, is not inflammatory except in the sense that any sermon upon the evils of intoxicating drink may be deemed such. From this characterization, we ought to except the last sentence. This is the only sinister intimation contained in any of the publications. We cannot say, however, that such an outburst by a single newspaper is sufficient to charge a community with prejudice. Much less can we say that the trial court abused its discretion in refusing to grant a change of venue because of such an utterance, published at a sorrowful time and under great mitigation. The after conduct of the community and the complete silence of all the newspapers upon the subject clearly negative any evil effect of such publication upon the rights of the defendant. Upon the record here set forth, the ruling of the trial court has abundant support in our previous cases. See *State v. McDonough,* 104 Iowa 6, 10; *State v. Williams,* 115 Iowa 97, 99; *State v. Brown,* 130 Iowa 57, 59; *State v. Dean,* 148 Iowa 566, 570; *State v. Weems,* 96 Iowa 426, 431.

We shall not take the time or space to quote from the foregoing authorities. Sufficient to say that they are specifically pertinent to the facts appearing in this record.

III. Appellant complains of the ruling of the court whereby his challenges to certain jurors were overruled. This assignment of error is predicated largely upon the same general grounds as those considered in the foregoing division. Counsel for defendant undertook to preserve his record and to protect his client from the effects of the previous rulings of the court in denying him change of venue. For that purpose, he challenged for cause the first three jurors drawn, and saved his exceptions to the adverse rulings of the court. His challenge was predicated upon the influence of the published articles hereinbefore re-

ferred to. Each of these jurors, on their examination, disclaimed any prejudice in the case. One of them had no recollection of ever reading the published articles referred to. Another conceded that he had probably read them, but said that he had entirely forgotten what they contained. This is substantially the net result of the examination of the jurors thus challenged. Clearly, the challenges were properly overruled.

IV. Error is assigned in the refusal of the court to reopen the case after both parties had rested, and to permit the defendant to become a witness in his own behalf.

It appears that the taking of evidence closed shortly after 4 P. M. of the third day of the trial. Both parties announced their evidence as closed. Thereupon, the trial court permitted an adjournment for the day, with an apparent mutual understanding that the argument of the case would open in the morning. At the opening of the court in the morning, the record discloses the following request made on behalf of the defendant:

3. CRIMINAL LAW: reception of evidence: waiver by accused of right to testify.

"Mr. Hess: The defendant now withdraws his rest in this case. I wish to offer further testimony, and I state to the court that matters have arisen since adjournment yesterday which makes it necessary for the defendant to offer further evidence in the case. Counsel for the defendant states that it has come to the attention of the attorneys for the defendant in going over the case. Counsel for the defendant now offers and desires to offer further testimony in the case, and to submit further facts to the jury which are material and necessary to a proper, full, and complete trial of the case; and counsel for the defendant states, unless they are permitted to do this, that prejudice will result to the defendant, and he will not have had an opportunity to offer the testimony that he desires to offer. That this request for a withdrawal of the defendant's rest is made at a time before the arguments of counsel have been begun, and before any rebuttal has been offered for the State, and the defendant now offers to waive any time that the State desires for further surrebuttal, and desires to present to the jury some further matters in the case which are necessary to a full understanding of the case."

This application was refused. Thereupon, the county attor-

ney opened the argument for the State. While the argument of the county attorney was in progress, he was interrupted by defendant's counsel, and the record discloses the following:

"Mr. Hess: The defendant now states to the court that the witness that he referred to was the defendant in this case. That the defendant himself desires to take the witness stand and testify with reference to what happened at the time of the collision, and the defendant now requests the privilege of going on the witness stand and telling what happened at the time of the collision, and that this was the witness referred to in the request, before the beginning of the arguments of counsel, the argument having proceeded only five minutes; and the defendant now requests the privilege of calling the defendant in his own behalf."

The court adhered to its previous ruling. It is now urged that the defendant was prevented from testifying in his own behalf, and that, in so ruling, the trial court abused its discretion.

The record above quoted is quite a complete answer to this contention. The defendant offered no explanation or excuse as to why he declared his evidence closed on the previous day, without availing himself of the privileges of the witness stand. If there had been some oversight or mistake or misunderstanding which brought about such result, it would have been easy to so state. Nothing of that kind is claimed. The court was charged with the duty of conducting an orderly trial. When the evidence closed on the day before, the witnesses on both sides were presumptively excused. If, for any reason transpiring thereafter, the defendant deemed it to his interest to take the witness stand, it was incumbent upon his counsel to make prompt request to that end. In the first application made by counsel, before the argument had commenced, he did not disclose at all that the defendant desired to take the witness stand. Neither did he disclose the nature of the evidence which he wished to introduce, nor any reason why he had not been able to introduce it on the day before. This was the condition of the record when the court overruled the application. It was only after the court had ruled, and an exception had been taken to the ruling, and the argument to the jury had actually begun, that the defendant mended his

hold and advised the court that he desired to become a witness in his own behalf. The record discloses no reason for the adoption of this progressive and piecemeal method. If the real desire and purpose of the defendant in his first application to reopen the evidence was to become a witness in his own behalf, why should he not have said so at that time? In asking the indulgence of the court, it was his plain duty to state in the first instance that he wanted to become a witness in his own behalf. He did not do so. Instead of addressing a direct request to the court to grant his desire, he chose circumlocution, and withheld divulgence of his purpose. He thereby lost his call upon the indulgence of the court. Even if he had disclosed his purpose in the first instance, the court was entitled to some statement or showing excusing or explaining his change of attitude since he had rested his evidence. The closing of the evidence on the day before resulted presumptively in the discharge of the State's witnesses. For the defendant to change his attitude on the following day and to take the witness stand in his own behalf might put the State under the burden of recalling its witnesses, for the purpose of rebuttal. The court might well withhold its discretion in favor of his request under such circumstances, without a showing of some excuse for or explanation of the change of attitude.

Upon the record as made, no legal right of the defendant's was invaded or denied. Neither was there any abuse of discretion.

Some other minor errors are assigned, as pertaining to the introduction of evidence. We have examined them, and find them not well taken. The case was submitted to the jury upon instructions which are not complained of. The sufficiency of the evidence is not questioned. The case as made upon the record is remarkably free from any reasonable doubt at any material point. The evidence is undisputed and conclusive. The jury could not properly fail to convict thereunder. Nothing less than a miscarriage of justice could have resulted in acquittal. The only issue of fact made upon the trial was on the question whether the defendant was intoxicated. If the evidence of the State be accepted as true at this point, it explains the event as

the result of temporary depravity, and saved to the defendant some presumption of a better character while in a normal condition. If he was not intoxicated, as contended by his witnesses, then the only explanation of the event is on the theory of the utter and permanent depravity of the defendant, without any mitigation, and without any presumption of a better character under better conditions.

The record discloses no reversible error. The verdict has the clear support of the evidence. The judgment of conviction is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.