STATE OF IOWA, appellee, v. JAMES EDWARD WIMBUSH, appellant.

## No. 52357.

(Reported in 150 N.W.2d 653)

May 2, 1967.

Rehearing Denied August 30, 1967.

Henry Wormley, of Des Moines, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Ray A. Fenton, of Des Moines, County Attorney, for appellee.

Moore, J.—Defendant, James Edward Wimbush, was indicted by the Polk County grand jury for the crime of breaking and entering Washington Irving Junior High School in Des Moines in violation of Code section 708.8, to which he entered a plea of not guilty. On trial to a jury he was found guilty. June 14, 1966, he was sentenced to imprisonment in the Men's Reformatory at Anamosa for a period not to exceed ten years. From this judgment and sentence defendant appeals.

Defendant assigns and argues two propositions for reversal: (1) the evidence was insufficient to establish a jury question

and (2) the trial court erred in overruling his objections and giving instruction 10 relating to flight.

I. The rules governing our consideration of a claim of insufficient evidence to support a conviction are not seriously disputed here. Both parties cite the same prior pronouncements by us. We will not let a finding of guilt stand where there is an absence of proof of any essential element of the crime charged. A conviction notwithstanding such absence of proof amounts to a denial of a fair trial. The evidence is to be viewed in the light most favorable to the State. It is the jury's function, not ours, to decide disputed fact questions. A jury's finding of guilt is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586; State v. Stodola, 257 Iowa 863, 865, 866, 134 N.W.2d 920, 921, and citations.

In State v. Frink, 255 Iowa 59, 64, 120 N.W.2d 432, 435, we quote this from State v. Miskell, 247 Iowa 678, 686, 687, 73 N.W.2d 36, 41: "In a criminal action the cause should be submitted to the jury, and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. * * * the State's evidence, with all reasonable inferences therefrom, must be taken as true and viewed in the light most favorable to the State, and it is necessary to consider only the evidence which tends to support the verdict."

Any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, speculation or conjecture. State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879, 881, and citations.

With these rules in mind we turn to the evidence. George Formaro, a janitor at Washington Irving Junior High School in Des Moines, testified that when he came to work Saturday morning, April 16, 1966, he noticed a window in the southeast corner of the school metal shop was open, the top windowpane above the latch had been broken, the latch was unlocked and there was broken glass below the window on the

shop floor. He stated all the school windows are closed and locked every night.

Formaro stated across from the open window there is a doorway entering into a small hallway which connects the metal shop with the woodshop. This hallway leads out to the hall of the regular portion of the school building where the other classrooms are located. This particular morning in the middle of the hallway he saw a television set which is kept in the school auditorium. He then checked and found a window-pane in the auditorium door was broken. The auditorium is north of the metal shop.

Lacey Spriggs, vice-principal of Washington Irving, testi-fied he went to the school that morning in response to a phone call where he observed the pane broken out of the window in the metal shop and also the one in the auditorium door. It was later discovered two microphones and a transistor radio were missing. Spriggs stated defendant had not been given permis-sion to be in or about the school building.

Detective Charles Welch was called to the school the same morning and observed the two broken windows and the televi-sion set which had been moved from the auditorium to the hallway outside the metal shop. He stated more than one pane would have been broken if a rock had been thrown through the metal shop window while it was open. No rock or other such object was found inside the shop.

G. R. Limke, Des Moines identification bureau detective, went to the school that morning and with Welch checked the ground outside the broken metal shop window. He found footprints but none could be measured or photographed. Limke testified he observed a print of a high and narrow heel be-longing in his estimation to the same type shoe defendant was wearing when arrested several days later.

Limke testified he examined the television set for finger-prints and lifted a partial palm print from its side. There were fingerprints corresponding with the position of that palm but they could not be identified. He stated when the person carrying the set placed it on the floor he smeared the four finger-prints directly below the palm to the extent they could not be

used. He described smears in two areas where he believed the set had been carried. Limke further stated the television set had a slight covering of dust on it and that it appeared to him the dust had been disturbed the evening before.

On April 28, 1966, Limke took two sets of finger and palm prints from defendant. After relating his experience and qualifications he pointed out fourteen points of similarity between defendant's palm print and that taken from the television set. He opined the print found on the set could only be that of defendant. Photographs of both prints were identified and received in evidence.

Des Moines detectives, Arnett Davis and Tom Spencer, on April 28, 1966, went to a Des Moines residence on information defendant was there. As they approached Spencer saw a man standing near the door and then step back into the house. Spencer went to the front and Davis to the back door. When Davis arrived at the back door defendant appeared in the doorway and was asked his name. Defendant replied it was Arthur Ousley and when asked by Davis for identification defendant displayed a draft card for Arthur Ousley.

After being told by a woman at the front door defendant was not there Spencer heard talk and went to the back door. As Spencer came around to the back door he said, "Hello Jimmie". Defendant said, "You are mistaken, my name is Arthur Ousley". Spencer then said, "You are Jimmie Wimbush—come out we want to talk to you".

Davis testified as defendant came out he placed his hand on defendant's arm and led him onto the porch and then Spencer grabbed the other arm and advised defendant he was under arrest and coming to the station. Davis stated defendant then suddenly wrenched free and started to run. Davis ran after him, ordered defendant to stop and fired at him with his pistol. Defendant then stopped, came back and was taken to the police station.

Spencer's testimony differed from that of Davis only as to what happened immediately before defendant broke and ran. Spencer stated he had not taken hold of defendant and had not advised defendant he was under arrest.

We believe this is a fair summary of the record. Defendant offered no evidence.

Applying the stated applicable rules to the record we conclude the evidence of each element of the crime charged was substantial and clearly justified rejection of defendant's motions attacking the sufficiency of the evidence.

■ II. Defendant next argues the trial court erred in giving instruction 10 which states:

"It is claimed by the State that the defendant, James Edward Wimbush, fled and endeavored to escape from the officers after his arrest, and in this regard you are instructed that if you find the offense charged herein was committed and that the defendant fled from the officers for the purpose of avoiding and retarding prosecution for said offense, then such flight was a circumstance tending to connect the defendant with the commission of the crime; and the jury would be justified in considering such flight as evidence of guilt.

"The credit and weight, if any, to be given such evidence is a question solely for you to determine in the light of all the evidence in the case."

The only exception to the instructions taken by defendant's trial counsel was: "That the Court misdirected the jury in a material-matter of law in the following respects, to-wit: (a) That instruction No. 10 providing in substance that the jury could take into consideration the flight of the defendant after arrest as an inference of, evidence of, or indicative of guilt, said instruction not being warranted by the facts in this case and said instruction not being a proper statement of the law."

■ Defendant's assertion instruction 10 was not warranted by the facts is not argued by defendant's appeal counsel. This is understandable in view of our prior pronouncements. In State v. Bige, 195 Iowa 1342, 1347, 1348, 193 N.W.17, 20, we say:

"It is thought by appellant that the court was not warranted in giving an instruction on flight, because there was no foundation in the evidence, for that it was not shown that defendant knew he was accused or suspected, or that he fled to avoid arrest. We have held that evidence is properly admissible, and that it is proper to instruct on this question, even though

the accused had not been charged with the commission of the offense. It was for the jury to say, under all the circumstances, whether he departed because of his consciousness of guilt. State v. Robinson, 170 Iowa 267, 283; State v. O'Meara, 190 Iowa 613, 627; State v. Christ, 189 Iowa 474, 481." See also State v. Waltz, 158 Iowa 191, 139 N.W. 458.

III. In Wigmore on Evidence, Third Ed., section 276, Volume II, page 111, under the title "Conduct as Evidence of Guilt" the editor states: "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."

McCormick on Evidence, section 248, pages 532, 533, puts it thus: " 'The wicked flee when no man pursueth.' Many acts of a defendant after the crime seeking to escape the toils of the law are received as admissions by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself. In this class are flight from the locality after the crime, assuming a false name, resisting arrest, * * *." See also Jones on Evidence, Fifth Ed., section 386, page 717.

We have held many times that evidence of escape from custody and flight of an accused is admissible as a criminating circumstance. State v. O'Meara, 190 Iowa 613, 625, 177 N.W. 563, 569; State v. Heath, 202 Iowa 153, 156, 209 N.W. 279, 281; State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 641. See also 29 Am. Jur.2d., Evidence, section 280, and 22A C. J. S., Criminal Law, section 625a.

Defendant recognizes an instruction on flight may be given in a proper case but argues instruction 10 is too strong. He cites State v. Arthur, 23 Iowa 430 and State v. Poe, 123 Iowa 118, 120, 98 N.W. 587, 101 Am. St. Rep. 307. In Arthur we recognized an unexplained attempt to escape is a circumstance against a party accused of crime but reversed a conviction because the instruction stated a strong presumption of guilt was raised thereby. In Poe our earlier cases are reviewed which hold evidence of flight should be considered as tending to establish guilt and state flight is a circumstance prima facie indicative of

guilt. We reversed in Poe, however, because the flight instruction stated, "such fact would be presumptive evidence of guilt".

Instruction 10 does not contain the expressions condemned in the Arthur and Poe cases. Except for the first sentence it is identical with the flight instruction which we approved in State v. Ford, 259 Iowa 744, 145 N.W.2d 638. It is well supported by our holdings in State v. Barton, 258 Iowa 924, 140 N.W.2d 886; State v. Agee, 257 Iowa 1345, 136 N.W.2d 419; State v. Bige, 195 Iowa 1342, 193 N.W. 17; State v. O'Meara, 190 Iowa 613, 177 N.W. 563. See also 23A C. J. S., Criminal Law, section 1185.

We find no reversible error.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.