**STATE of Iowa, Appellee,**

v.

**Robert Edd LONEY, Appellant.**

**No. 52913.**

Supreme Court of Iowa.

Dec. 10, 1968.

Morton A. Teitle, Davenport, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and Edward N. Wehr, County Atty., for appellee.

BECKER, Justice.

Early in the morning of May 23, 1967 Henry Klindt, bartender at Griffin's Tavern in Davenport, was killed in the tavern during the course of a robbery. By information dated June 1, 1967 defendant, Rob- ert Edd Loney, was charged with the first degree murder of Klindt. The case went to trial on August 21, 1967. The jury returned a verdict of guilty of first degree murder and defendant was sentenced to life imprisonment. He appeals, citing as errors failure to grant a new trial because the verdict is contrary to the evidence, failure to quash the county attorney's information and failure to grant a change of venue.

I. We first consider failure to grant a new trial because the verdict is contrary to the evidence. For this purpose the evidence is viewed in the light most favorable to the State. State v. Wimbush, 260 Iowa 1262, 150 N.W.2d 653, 654.

When Klindt was shot there were five patrons in Griffin's Tavern. The bandit was masked or hooded. One of these eye-witnesses, Otto Schreiber, testified to the robbery as follows: "I heard the door opened. I looked in that direction, and saw a man coming in who seemed to have some kind of a hood pulled over his head. I thought immediately, this looks like it's going to be a stick-up. I kind of stood up from my chair and this man walked in about—oh, there was a door on the left side as he came in. He looked at the door, stopped at the door, looked in the back room, there was a door open, and then slowly turned around, with a gun coming up, and said—I think he said, 'I want your money,' and he was aiming it right at Heinie's head, although he was quite a distance away from him. Well, then Heinie started to move away from the cash register. I had seen Heinie—had noticed him, too, as I looked. He pulled his head way up like that and still had his hand in the cash register. And he looked at him and then he started to walk across to the—the cash register being on the back bar, he walked to the bar, which was only about two steps, and he put his hands under the bar. Of course he was between me and the hooded man, and he came up with something, what I thought was a rifle. At that moment there was only one thing I

thought, but I didn't say it, and that's 'Heinie, don't be foolish.' But before he could get any further, why, I heard the shooting start, and there were a number of shots fired and I see him fall down, and that was it."

Mr. Schreiber, John Cameron and Steven Daniels all gave somewhat similar testimony. None could positively identify defendant. Mr. Daniels, at a distance of 5 or 6 feet "noticed that he had tattoos on each hand below the knuckle on each finger." These tattoos were also noted by Leo Underwood who was with Daniels and Cameron in the tavern. Underwood, the only witness who positively identified defendant, was recalled and testified that because of fear of reprisal he had intentionally misidentified defendant at a police lineup a few days after the murder. He said he had a change of heart and rectified his error by talking to the county attorney.

The evidence connected a specific gun to the murder and defendant to the gun. Harold Roy Martin testified he was the owner of a 32 automatic pistol which he loaned to defendant on the evening of May 22, 1967. The gun was not returned to its owner by defendant and was not introduced into evidence. Martin had test-fired the pistol in August of 1966. He had saved the bullets and casings. Larry Koepke, age 9, the son of a friend of Martin, had also obtained and saved some casings from Martin's pistol. Custody of these bullets and casings was traced. They were properly admitted in evidence.

Four bullets were removed from decedent's body. Five spent cartridge casings were found in the tavern and one was found in a catch basin outside near the scene.

Courtlandt Cunningham, a special agent for the Federal Bureau of Investigation, was qualified as an expert. He testified the test-fired bullet from Martin's 32 pistol and the bullets extracted from Klindt's corpse were fired from the same weapon

"to the exclusion of all other weapons." He also stated that in his opinion the cartridge cases found in the tavern and those kept by Martin and young Koepke were fired by the same weapon.

Other evidence concerning a red car and defendant's presence in or near the scene of the crime was introduced but need not be examined in detail here.

After the State rested defendant made a motion for directed verdict which was overruled. The defense then rested without introducing any evidence. The court instructed on first degree murder, felony murder and second degree murder. The jury returned a verdict of guilty of murder in the first degree.

■ Criminal cases should be submitted to the jury if there is substantial evidence reasonably tending to support the charge. State v. Estrella, 257 Iowa 462, 465, 133 N.W.2d 97 and State v. Wimbush, supra.

■ The jury could find from the ballistic evidence and the witnesses' statements defendant killed Klindt either with premeditation or in the process of committing a felony. The direct testimony, coupled with expert and circumstantial evidence linking the defendant to the weapon and the weapon to the crime, generated a jury question. The jury's finding of guilt is binding on us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Wimbush, supra.

■ II. Another assigned error concerns failure to quash the county attorney's information. The murder was committed on May 23. Defendant was arrested as a parole violator on May 24. The parole officer, Paul Miller, had received information defendant was in possession of a gun. Miller, with the help of two Davenport detectives, made the arrest. Defendant was held on the parole violation charge until June 1 when he was charged with murder. His parole was revoked on June 8.

Defendant asserts this procedure was in violation of section 758.1 of the Code and the State and Federal Constitutions because he was not taken before a magistrate "without unnecessary delay." He cites Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; State v. Triplett, 248 Iowa 339, 79 N.W.2d 391. Those cases concern the admission of in-custody statements obtained between the time of arrest and when a suspect was to be taken before a magistrate. No such statement is in issue here.

Detention of defendant as a parole violator from May 24 to June 1 did not violate his constitutional rights under the circumstances, State v. Rath, 258 Iowa 568, 139 N.W.2d 468. Such detention could not be used successfully as a basis for motion to quash the indictment. Evidentiary matters such as were considered in the McNabb, Mallory and Triplett cases, all supra, are not before us. The motion was properly overruled.

■ III. Defendant filed a verified petition for change of venue in which he alleged he could not receive a fair and impartial trial in Scott County due to the excitement and prejudice against him arising out of certain inflammatory newspaper, radio and television publicity in the area. The application was supported by three affidavits in general terms by disinterested residents of the county, all as required by chapter 778, Code of Iowa, 1966.

No counter affidavits were filed by the State. A hearing was held on the petition at which time five newspaper articles appeared dated May 23, May 25, May 29, June 2 and June 2 all in 1967. Subsequent jury trial commenced August 21, 1967. Two of the three affiants were orally examined by the State at a hearing on the motion. The third affiant was unavailable. Neither side complains of this omission nor the use of direct testimony. Cf. section 778.7, Code, 1966. The body of each affi-

davit reads: "I am familiar with the case of State of Iowa vs. Robert Edd Loney and have read various newspaper articles and have heard the case broadcasted on television or radio and have heard various persons speak in reference to this case.

"I further state that it is my opinion and belief that from what I have read, seen and heard in reference to the case of State of Iowa vs. Robert Edd Loney, it is impossible for the Defendant to get a fair and impartial trial in Scott County, Iowa due to the excitement and prejudice against him in said County."

After hearing the affidavits and examining the newspaper accounts the trial court held there was insufficient showing of excitement and prejudice against defendant such as would prevent a fair trial. We agree. Miss Clay had talked to 25 or 30 people. Only one had expressed a specific belief defendant was guilty. The witness laid particular stress on the wide acquaintance of deceased and the impact of the newspaper publicity. Mr. Carpenter had talked to 4 or 5 people in the last few days. His opinions were also based on the impact of the news media publicity given to the case. Neither witness showed the type of community excitement usually associated with change of venue. See State v. Mauch, 236 Iowa 217, 17 N.W.2d 536; State v. Hodges, 198 Iowa 1208, 199 N.W. 297.

Reference was made to television and radio releases but no record of the content of these releases was made. Factual data for review of the trial court's judgment is wholly lacking in this area.

The newspaper clippings received in evidence extend from the day of the murder for about 10 days. The original pre-arrest release makes no reference at all to defendant but recounts the essential details of the crime, including the evidence that the gunman had tattoos on each of four fingers of his left hand between the knuckles and the first joint. Subsequent releases referred to defendant by name, carried

his picture, mentioned he was being held as a parole violator, and stated generally that evidence had been forwarded to the Federal Bureau of Investigation.

We have examined the clippings with care. The releases were not of the oft-repeated, inflammatory character such as to create a climate where an impartial trial would become difficult or impossible. No adverse publicity from June 2 to the date of the trial, more than eleven weeks later, is shown.

Scott County is part of a large metropolitan area having a 1960 population of 119,000, Iowa Official Register, 1967–1968, p. 336. There was insufficient showing of widespread excitement in connection with this crime or that such excitement or prejudice, if such there was, continued to date.

■ Defendant contends failure on the part of the State to file counter affidavits required the court to grant the change of venue and the court's refusal to do so constituted an abuse of discretion. State v. Mooney, 10 Iowa 506 is cited as a case where this court reversed for failure of the trial court to grant a change of venue. The court noted the State's failure to file counter affidavits but a close reading of the case indicates the decision was made on the basis of a substantial showing made as to prejudice, not on lack of counter affidavits.

Under our original statute, application for change of venue in proper form, supported by statutory affidavits, left the court no discretion in criminal (as well as civil) cases and the venue had to be changed. Cass v. State, 2 Greene 353, (1849). The statute was amended in 1857 to provide for discretion in the trial court to "decide the application according to the very right of the matter, Acts of the Sixth General Assembly, 1856, chapter 227, p. 389. In State v. Nash and Redout, 7 Iowa 347, 369 this court considered the effect of the amendment was to require the court to determine whether the proofs re-quired a change of venue. Despite filing of counter affidavit the holding required a change of venue. In State v. Mooney, 10 Iowa 506, 511 a similar situation occurred except the State filed no counter affidavits. This omission was noted but the case actually holds sufficient showing of prejudice had been made to require a change of venue.

In State v. Canada, 48 Iowa 448, no counter affidavits were filed but it is clear from the opinion the decision turned on the showing made by the applicant, not on the failure of the State to resist. In State v. Crafton, 89 Iowa 109, 56 N.W. 257 counter affidavits were filed but were deemed insufficient. State v. Dean, 148 Iowa 566, 126 N.W. 692 was also a case where counter affidavits were filed by the State. This court refused to interfere with the trial court's refusal to grant a change of venue. Among other things, we said it was for the trial court to determine: "[W]hether any prejudice that may have existed against defendant such as would probably prevent his having a fair trial had not so far subsided as that an unbiased jury could be secured, and there is not the slightest showing that the jury which did finally convict him was influenced in any way by passion or prejudice. Under the circumstances of the case, we are well satisfied that the ruling of the trial court should not be interfered with."

The above cases, cited by defendant, are also cited with others in State ex rel. Fletcher v. District Court, 213 Iowa 822, 238 N.W. 290, 80 A.L.R. 339 for the following proposition: "The application in the form prescribed and in conformity to the requirements of the statute and on its face is proper and sufficient. It made out a prima facie case, which if uncontroverted entitled the applicant to the change."

An examination of the cases relied upon would lead to the conclusion the statement is too broad. Since that holding our opinions have consistently required a showing of entitlement to the change of venue by

the applicant. The presence or absence of a resistance, with or without affidavits, has not been in issue. "A motion for a change of venue is addressed to the sound discretion of the trial Court and only where an abuse thereof is shown will this Court interfere." State v. Ferguson, 249 Iowa 361, 86 N.W.2d 901; State v. Meeks, 245 Iowa 1231, 65 N.W.2d 76 and State v. Mauch, 236 Iowa 217, 17 N.W.2d 536.

 The movent has ' the burden to show entitlement to a change of venue. The court has specific statutory discretion in the area, section 778.9, Code, 1966. We do not approve failure of the State to affirmatively meet the showing made by defendant in this situation. Cf. State v. Bowers, Iowa, 162 N.W.2d 484, (opinion filed November 12, 1968), where the State also failed to make any showing to aid the court in deciding a matter of importance. However, such failure does not rob the trial court of its discretion to determine, under the record made, the necessity or advisability of a change of place for trial.

We should add there is no record of the voir dire examination. No showing is made of any difficulty in selection of an impartial jury. It is not shown the jury was, in fact, biased or prejudiced in any way. Cf. State v. Williams, 245 Iowa 494, 499, 62 N.W.2d 742. Defendant's assignment of error for failure to grant a change of venue cannot be sustained as a ground for reversal.

Affirmed.

All Justices concur, except RAWLINGS and MASON, JJ., who dissent.

LeGRAND, J., takes no part.

RAWLINGS, Justice (dissenting).

I am unable to agree with the conclusion reached in Division III of the majority opinion, therefore respectfully dissent.

In upholding trial court's refusal to grant defendant's request for change of venue, the majority weakens the office of venue as a recognized means for assuring an accused a fair and impartial trial.

The majority would apparently require a defendant show existence of widespread identifiable prejudice in the community where charged before a refusal to allow a change of venue would be violative of trial court's sound discretion. With this I cannot agree.

A showing of actual or isolatable prejudice should not be a prerequisite to reversal. See Estes v. Texas, 381 U.S. 532, 542–543, 85 S.Ct. 1628, 1632–1633, 14 L. Ed.2d 543, and American Bar Association Advisory Committee on Fair Trial and Free Press, Standards Relating to Fair Trial and Free Press, page 119. To require such a showing as the majority apparently prescribes would, in my opinion, serve to impose an impossible burden upon most, if not all, defendants.

While we are not here concerned with a case factually comparable to Sheppard v. Maxwell, 384 U.S. 333, 362–363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, this statement by the Federal Supreme Court relative to burden imposed upon an accused in order to obtain a change of venue will be helpful: "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."

By virtue of the fact defendant in this case does not present a challenge as to fair trial under the federal constitutional due

process mandate, and the rule set forth in Chapman v. California, 386 U.S. 18, 20–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705, the issue as to pretrial publicity and fair trial must be resolved upon the basis of our change of venue statutes, and common law standards.

I would hold trial courts, confronted with a motion under section 778.9, Code, 1966, should be required to distinctly find nothing less than that any pretrial publicity will justify a change of venue unless it clearly appears there is no reasonable likelihood the news coverage will serve to deny an accused a fair and impartial trial. See Estes v. Texas, supra.

In the instant case defendant filed a written verified motion for change of venue, supported by affidavits of three disinterested parties as required by Code section 778.3. In addition he presented the court with newspaper articles which, inter alia, described defendant as having tattoos on four fingers of his left hand, being a "parole violator", and "finger-tattooed bandit", with photographs of the accused. Defendant also alleged adverse radio and television broadcasts were aired. To all of this as the majority concedes, the state failed to make any contrary showing whatsoever. I submit this alone is sufficient to support my conclusion, infra.

Under these circumstances I find there was a reasonable likelihood defendant could not be accorded a fair trial in the jurisdiction where charged.

In an apparent effort to bolster its conclusion, the majority also takes the position, no bias or prejudice is shown by virtue of the voir dire examination of the jury, or otherwise.

The difficulty with this approach is, as stated by the American Bar Association Advisory Committee on Fair Trial and Free Press, Standards Relating to Fair Trial and Free Press, page 127: "* * * the problem of obtaining accurate answers on voir dire—is the juror consciously or subconsciously harboring prejudice against the accused resulting from widespread news coverage in the community? Thus if change of venue and continuance are to be of value, they should not turn on the results of the voir dire; rather they should constitute independent remedies designed to assure fair trial when news coverage has raised substantial doubts about the effectiveness of the voir dire standing alone.

"The second difficulty is that when disposition of a motion for change of venue or continuance turns on the results of the voir dire, defense counsel may be placed in an extremely difficult position. Knowing conditions in the community, he may be more inclined to accept a particular juror, even one who has expressed an opinion, than to take his chances with other, less desirable jurors who may be waiting in the wings. And yet to make an adequate record for appellate review, he must object as much as possible, and use up his peremptory challenges as well. This dilemma seems both unnecessary and undesirable.

"The Committee therefore proposes * * * that when a motion for change of venue or continuance is made prior to the impaneling of the jury, it shall be disposed of before impaneling. And * * * the fact that a jury meeting prevailing standards has been obtained shall not be regarded as determinative." See also Estes v. Texas, supra.

Upon the basis of the foregoing I would reverse and remand with instructions to grant defendant's motion for change of venue and accord him a new trial.